[Cite as *Dayton v. State*, 2015-Ohio-3160.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CITY OF DAYTON, OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   26643 |
| | : | |
| v. | : | T.C. NO. 15CV1457 |
| | : | |
| STATE OF OHIO | : | (Civil appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 7th day of August, 2015.

. . . . . . . . . . .

JOHN C. MUSTO, Atty, Reg. No. 0071512, Assistant City Attorney, 101 W. Third Street, P. O. Box 22, Dayton, Ohio 45401
        Attorney for Plaintiff-Appellee

HALLI BROWNFIELD WATSON, Atty. Reg. No. 0082466 and NICOLE M. KOPPITCH, Atty. Reg. No. 0082129, Assistant Attorneys General, Constitutional Offices Section, 30 E. Broad Street, 16th Floor, Columbus, Ohio 43215
        Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

        **{¶ 1}** Defendant-appellant State of Ohio (hereinafter "the State") appeals a

decision of the Montgomery Court of Common Pleas, Civil Division, granting in part and denying in part a motion for summary judgment filed by plaintiff-appellee City of Dayton (hereinafter "Dayton"). The State filed a timely notice of appeal with this Court on April 8, 2015.

{¶ 2} On March 18, 2015, Dayton filed a "Verified Complaint for Declaratory Judgment and Preliminary and Permanent Injunction," in which it challenged the constitutionality of Amended Substitute Senate Bill No. 342 (hereinafter "S.B. No. 342") on the grounds that it violates Article XVIII, Section 3 of the Ohio Constitution, otherwise known as the "Home Rule Amendment." Am.Sub.S.B. No. 342 served to amend and enact several statutory provisions governing traffic law photo-monitoring devices. *See* R.C. 4511.092 – R.C. 4511.0914. In its complaint, Dayton specifically challenged the requirement in R.C. 4511.093(B)(1) that a law enforcement officer be present at the location of any traffic law photo-monitoring device when it is being operated. Dayton also challenged R.C. 4511.095(A)(2), the provision which requires that a local authority must conduct a public information campaign and safety study of the location under consideration for the placement of a new device before any new photo-monitoring equipment can be deployed. We note that although Dayton's complaint only references two specific provisions which it finds objectionable, it sought a declaratory judgment that all of S.B. No. 342 violates the home rule, and is therefore unconstitutional.

{¶ 3} Thereafter, on March 23, 2015, both parties filed their respective motions for summary judgment. Dayton also requested a temporary restraining order and a preliminary injunction regarding enforcement of Am.Sub.S.B. No. 342. While the trial court did not grant any preliminary relief requested by Dayton, it ordered an expedited

summary judgment briefing schedule upon agreement by the parties.

{¶ 4} In addition to arguing that R.C. 4511.093(B)(1) and 4511.095(A)(2) were unconstitutional as it had in its complaint, Dayton asserted that R.C. 4511.0912 violated the home rule because it prohibits municipal authorities from issuing speeding tickets for violations recorded by traffic law photo-monitoring devices unless the individual was driving more than six miles per hour above the speed limit in a school zone and/or park, or ten or more miles per hour above the speed limit in any other location. Accordingly, Dayton argued that it was entitled to summary judgment and sought a declaration that Am.Sub.S.B. No. 342 is unconstitutional, thus requiring an injunction prohibiting its enforcement. In its motion for summary judgment, the State argued that S.B. No. 342 is a general law, and therefore not subject to the home rule amendment to the Ohio Constitution. As such, the State asserted that S.B. No. 342 was constitutionally permissible.

{¶ 5} On April 2, 2015, the trial court issued a decision overruling the State's motion for summary judgment. In the same decision, the trial court granted Dayton's motion for summary judgment in part, concluding that while S.B. No. 342 was not unconstitutional in its entirety, certain provisions of the statute violated the home rule. Specifically, the trial court found that R.C. 4511.093(B)(1) and (3), 4511.095, and 4511.0912 were unconstitutional and permanently enjoined their enforcement.

{¶ 6} It is from this judgment that the State now appeals.

### The Dayton Ordinance / R.C.G.O 70.21

{¶ 7} On June 12, 2002, Dayton enacted an ordinance authorizing an "automated traffic control photographic system" (ATCPS) for placement at intersections throughout

the city. Initially, the system only provided for the enforcement of red light violations. Subsequently, on February 17, 2010, the system was modified to provide for the enforcement of speed violations as well. The ordinances are codified in Dayton R.C.G.O. 70.21. Dayton states that the purpose of the traffic law photo-monitoring system is to reduce the number of red light and speeding violations and automobile accidents in the city. Dayton also asserts that the system helps to conserve limited police resources. According to Dayton, there are currently over thirty-six speed and/or red light cameras operating throughout the city.

{¶ 8} Dayton maintains that the ordinance creates a system which is civil in nature, not criminal. The ordinance provides for civil enforcement imposing monetary fines upon the owners of vehicles that do not comply with posted speed limits or commit red light violations. Offenders who are recorded by the ATCPS are not issued criminal traffic citations, and offenses are not adjudicated by Dayton municipal courts. Offenders are not assessed points on their driving records, and Dayton has created and implemented an administrative hearing process presided over by an independent third party not employed by the Dayton Police Department. The ordinance states, however, that the "Dayton Police Department or its designee shall administer the ATCPS program."

{¶ 9} Contained in the notice of liability sent to the offender are the following: 1) the images of the vehicle and its license plate; 2) the ownership records of the vehicle; 3) the nature of the violation (red light/speeding) and the date upon which the offense occurred; 4) the amount of the civil penalty imposed; and 5) a signed statement by a Dayton Police Officer stating that a violation had occurred based upon review of the recorded images and/or speed measurement readings. The recorded images and speed measurement

readings taken from the ATCPS device are considered under the ordinance to be prima facie evidence of a violation. The ordinance further provides a means by which the owner of a vehicle can dispute a violation if he or she was not driving the vehicle at the time that the ATCPS recorded a violation. Owners choosing to appeal must send a written request to the Dayton Police Department within fifteen days of receiving the notice of liability. If an administrative hearing is held, the standard of proof utilized by the hearing officer is preponderance of the evidence.

### Amended Substitute Senate Bill No. 342

{¶ 10} Am.Sub.S.B. No. 342 was signed into law on December 19, 2014, and became effective shortly thereafter on March 23, 2015. The following Revised Code sections were enacted as a result of S.B. No. 342's passage: 4511.092; 4511.093; 4511.095; 4511.096; 4511.097; 4511.098; 4511.099; 4511.0910; 4511.0911; 4511.0912; 4511.0913; 4511.0914; and 4511.204(C)(2). Viewed collectively, the new sections provide a comprehensive definition section (R.C. 4511.092) and expand upon existing requirements for municipalities who employ the use of traffic photo-monitoring systems. We note that R.C. 4511.094 was already in existence prior to the passage of Am.Sub.S.B. No. 342, but parts of the section were updated by the new law including requirements for signs informing drivers that traffic law photo-monitoring devices are being operated in a particular area.

{¶ 11} As previously noted, the trial court found R.C. 4511.093(B)(1) and (3), 4511.095, and 4511.0912 to be unconstitutional and permanently enjoined their enforcement. R.C. 4511.093(A) begins by stating that "[a] local authority *may* utilize a traffic law photo-monitoring device for the purpose of detecting traffic law violations."

Clearly, the initial decision whether to implement the use of traffic cameras is left to the individual municipality. Once the decision is made to install traffic cameras, their continued use becomes subject to the statewide conditions enunciated in the remainder of Am.Sub.S.B. No. 342. Specifically, R.C. 4511.093(B)(1) provides that if a municipality implements the use of a traffic law photo-monitoring device, a law enforcement officer must be present at the location of the device while it is being operated. R.C. 4511.093(B)(2) simply states that a law enforcement officer who is present while the photo-monitoring device is operating can issue a ticket for any violation he or she personally witnesses. Alternatively, if the officer who is present did not issue a ticket for the observed violation, the municipality may issue a ticket for a civil violation if it was recorded by the photo-monitoring device. R.C. 4511.093(B)(3).

{¶ 12} R.C. 4511.095 requires municipalities to perform certain pre-implementation procedures before deploying a traffic law photo-monitoring device that was not in existence at the time that Am.Sub.S.B. No. 342 became effective. Specifically, R.C. 4511.095(A)(1) requires a municipality to conduct a safety study of intersections or locations under consideration for placement of a traffic camera. The municipality is also required to conduct a public information campaign to inform drivers about the use of traffic cameras at new system locations prior to their implementation at the new location. R.C. 4511.095(A)(2). Municipalities are also required to publish at least one notice in a local newspaper of general circulation regarding their intent to use traffic cameras at new locations, the locations of the traffic cameras, and the date on which the first traffic camera will become operational. R.C. 4511.095(A)(3). Additionally, when a new traffic camera is deployed, the municipality must "refrain from levying any

civil fines" for violations detected by the device for at least thirty days after it becomes operational. R.C. 4511.095(A)(4). During the thirty day interim after the traffic camera becomes operational, the municipality may send a warning notice to drivers who have committed recorded traffic violations. *Id.*

{¶ 13} The final section ruled unconstitutional by the trial court, R.C. 4511.0912, provides the circumstances when a ticket may be issued for speeding violations recorded by a traffic camera. R.C. 4511.0912(A) states that a civil ticket may not be issued for a violation recorded by a traffic camera located in a school zone or local park unless the vehicle in question is captured traveling at a speed that exceeds the posted speed limit by at least six miles per hour. In all other locations, the vehicle must be recorded by the traffic camera traveling at least ten miles over the posted speed limit for a civil ticket to issue. R.C. 4511.0912(B).

### Standard of Review

{¶ 14} As this Court has previously noted:

When reviewing a summary judgment, an appellate court conducts a de novo review. *Village of Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "De Novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Harris v. Dayton Power & Light Co.*, 2d Dist. Montgomery No. 25636, 2013–Ohio–5234, ¶ 11 (quoting *Brewer v. Cleveland City Schools Bd. [o]f Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997) (citing *Dupler v. Mansfield Journal Co .*, 64 Ohio St.2d 116, 413 N.E.2d

1187 (1980)). Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. Of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

Civ. R. 56 defines the standard to be applied when determining whether a summary judgment should be granted. *Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 463, 880 N.E.2d 88 (2008). Summary judgment is proper when the trial court finds: "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the Motion for Summary Judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Fortune v. Fortune*, 2d Dist. Greene No. 90–CA–96, 1991 WL 70721, *1 (May 3, 1991) (quoting *Harless v. Willis Day Warehous[ing] Co.*, 54 Ohio St.2d 64, 67, 375 N.E.2d 45 (1978)). The initial burden is on the moving party to show that there is no genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292–93, 662 N.E.2d 264 (1996). Once a moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dotson v. Freight Rite, Inc.*, 2d Dist. Montgomery No. 25495, 2013–Ohio–3272, ¶ 41 (citation omitted).

*Cincinnati Ins. Co. v. Greenmont Mut. Hous. Corp.*, 2d Dist. Montgomery No. 25830, 2014-Ohio-1973, ¶ 17-18.

{¶ 15} Because they are interrelated, the State's first and second assignments of

error will be discussed together as follows:

{¶ 16} "THE TRIAL COURT ERRED IN HOLDING THAT AM.SUB.S.B. NO. 342 PURPORTS ONLY TO LIMIT MUNICIPAL POWERS AND IS NOT A GENERAL POLICE, SANITARY OR SIMILAR REGULATION."

{¶ 17} "THE TRIAL COURT ERRED IN HOLDING THAT PORTIONS OF AM.SUB.S.B. NO. 342 DO NOT PRESCRIBE A RULE OF CONDUCT ON CITIZENS GENERALLY."

{¶ 18} In its first assignment, the State contends that the trial court erred when it found that Am.Sub.S.B. No. 342 purports only to limit municipal powers and is not a general police, sanitary, or similar regulation. In its second assignment, the State argues that the trial court erred when it found that portions of Am.Sub.S.B. No. 342 do not prescribe a rule of conduct on citizens generally. Essentially, the State asserts that the trial court erred when it found that specific sections of Am.Sub.S.B. No. 342 did not satisfy the third and fourth prongs of the general law test enunciated in *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, thereby violating the home rule exception in the Ohio Constitution.

{¶ 19} Initially, we recognize the "fundamental principle that a court must 'presume the constitutionality of lawfully enacted legislation.' " *Cleveland v. State*, 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, ¶ 6, citing *Arnold v. Cleveland*, 67 Ohio St.3d 35, 38, 616 N.E.2d 163 (1993). Therefore, we begin with the presumption that Am.Sub.S.B. No. 342 (specifically, R.C. 4511.093(B)(1) & (3), 4511.095, and 4511.0912) is constitutional. Accordingly, the statute "will not be invalidated unless the challenger establishes that it is unconstitutional beyond a reasonable doubt." *Id.* at ¶ 6.

**{¶ 20}** Under the Home Rule Amendment to the Ohio Constitution, "[m]unicipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, *as are not in conflict with general laws.*" Article XVIII, Section 3. This amendment provides municipalities with the "broadest possible powers of self-government in connection with all matters which are strictly local and do not impinge upon matters which are of a state-wide nature or interest." *State ex rel. Morrison v. Beck Energy Corporation*, Ohio Sup. Ct. Slip Opinion No. 2015-Ohio-485, ¶ 14, citing *State ex rel. Hackley v. Edmonds*, 150 Ohio St. 203, 212, 80 N.E.2d 769 (1948). Therefore, a municipal ordinance must yield to a state statute if 1) the ordinance is an exercise of police power, rather than of local self-government; 2) that statute is a general law; and 3) the ordinance is in conflict with the statute.

**{¶ 21}** Neither party disputes that Dayton ordinance R.C.G.O. 70.21, enacting an automated photo-enforcement program, was lawfully enacted pursuant to its constitutionally protected home rule powers. Recently, in *Walker v. Toledo*, Ohio Sup. Ct. Slip Opinion No. 2014-Ohio-5461, ¶ 3, the Ohio Supreme Court reaffirmed its holding in *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, that municipalities, such as Dayton, have home rule authority under Article XVIII of the Ohio Constitution to impose civil liability on traffic violators through the use of a photo enforcement system for speed and red light violations. Accordingly, the first and third parts of the analysis are not involved this case. Dayton acknowledges that its traffic camera ordinance is an exercise of police power. Additionally, Dayton acknowledges

that R.C.G.O. 70.21 is in conflict with Am.Sub.S.B. No. 342.

{¶ 22} Indeed, the sole issue before this Court is whether Am.Sub.S.B. No. 342 qualifies as a general law. "A general law has been described as one which promotes statewide uniformity." *Ohio Assn. of Private Detective Agencies, Inc. v. N. Olmstead*, 65 Ohio St.3d 242, 244, 602 N.E.2d 1147 (1965). Furthermore, general laws are those "enact[ed] to safeguard the peace, health, morals, and safety, and to protect the property of the people of the state." *Schneiderman v. Sesanstein*, 121 Ohio St. 80, 83, 167 N.E. 158 (1929). "Once a matter has become of such general interest that it is necessary to make it subject to statewide control as to require uniform statewide regulation, the municipality can no longer legislate in the field so as to conflict with the state." *State ex rel. McElroy v. Akron*, 173 Ohio St.3d 189, 194, 181 N.E.2d 26 (1962).

{¶ 23} A statute qualifies as a general law if it satisfies four criteria. The statute must: 1) be part of a statewide and comprehensive legislative enactment; 2) apply to all parts of the state alike and operate uniformly throughout the state; 3) set forth police, sanitary or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to prescribe those regulations; and 4) prescribe a rule of conduct upon citizens generally. *Mendenhall*, at ¶ 20; *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, syllabus.

{¶ 24} The trial court found that Am.Sub.S.B. No. 342 satisfied the first two elements of the *Canton* general law test, namely that the statute is part of a statewide and comprehensive legislative enactment which applied to all parts of the state and operated uniformly therein. We agree with the trial court in this respect; therefore, the first two elements of the *Canton* test are not at issue in the instant appeal.

**{¶ 25}** The trial court, however, found that Am.Sub.S.B. No. 342 failed to satisfy the third and fourth elements of the *Canton* test. Specifically, the trial court found that R.C. 4511.093(B)(1) & (3), 4511.095, and 4511.0912 were unconstitutional because they failed to set forth police, sanitary, or similar regulations and acted only to limit municipal authority. Moreover, the trial court found that the same sections of the statute did not prescribe a rule of conduct upon citizens generally. For the reasons that follow, we disagree and find that Am.Sub.S.B. No. 342 is general law that falls outside the scope of the home rule.

**Sets forth a police, sanitary, or similar regulation**

**{¶ 26}** The third element of the *Canton* test requires that for a statute to be considered a general law, it must set forth police, sanitary, or similar regulations, instead of merely granting or limiting a municipality's power to create such regulations. Am.Sub.S.B. No. 342 regulates the statewide use of traffic cameras to record red light/speeding violations. The statute is a comprehensive legislative enactment which applies to all parts of the state and is operated uniformly throughout.

**{¶ 27}** As previously noted, Am.Sub.S.B. No. 342 contains several provisions, all of which establish various procedures and rules which regulate the use of traffic cameras and the enforcement of the subsequent civil citations. In addition to the provisions ruled unconstitutional by the trial court, Am.Sub.S.B. No. 342 enacted the following additional regulations:

**R.C. 3937.411** – This section instructs insurers that they may not deny coverage and/or raise the insurance premium of any individual who

receives a civil ticket based on a violation recorded by a traffic camera.

**R.C. 4511.096(A)** – This section contains a requirement that a law enforcement officer examine the evidence of an alleged violation recorded by a traffic camera in order to determine whether a violation has in fact occurred. If a violation is found to have occurred, the officer may use the vehicle's license plate number to identify the registered owner.

**R.C. 4511.096(B)** – This section states that the fact that a person is found to be the registered owner of the vehicle is prima facie evidence that the person was operating the vehicle at the time the traffic violation occurred.

**R.C. 4511.096(C)** and **(D)** – These sections contain updated requirements for the standards with respect to the issuance of civil tickets for violations recorded by traffic cameras.

**R.C. 4511.097** – This section explains what information should be included in the civil ticket issued to an offender for a violation recorded by a traffic camera and states that the local authority is required to send the ticket no later than thirty days after the violation. Significantly, this section mandates that the officer, required to be present by R.C. 4511.093(B)(1) whenever traffic cameras are in use, must include his name and badge number in the ticket sent to the offender. R.C. 4511.097(B)(7).

**R.C. 4511.098** – This section sets out the options for paying or challenging the civil ticket issued to a person for a violation recorded by a traffic camera.

**R.C. 4511.099** – This section sets forth the procedure for a hearing, the standard of proof (preponderance of the evidence), and affirmative

defenses that apply if an alleged offender chooses to challenge a ticket issued based on the recorded image of a violation from a traffic camera.

**R.C. 4511.0911** – This section contains requirements for the manufacturer of the traffic camera to provide to the local authority the maintenance record for each traffic camera used in the municipality, and an annual certificate of proper operation for each traffic camera.

{¶ 28} R.C. 4511.093, 4511.095, and 4511.0912 undoubtedly regulate the requirements and implementation procedures to which a municipality must adhere if it chooses to use traffic cameras to record red light/speeding violations. However, as is clear from the other provisions listed above, Am.Sub.S.B. No. 342 has "extensive scope and does more than grant or limit state powers." *Mendenhall*, at ¶ 24. In addition to regulating municipal authority, the other provisions of Am.Sub.S.B. No. 342 also establish laws and procedures for motorists to follow if they are recorded by the traffic cameras committing a red light or speeding violation. Moreover, the statute establishes requirements for the manufacturer of the traffic camera regarding maintenance and annual upkeep of the device. Finally, Am.Sub.S.B. No. 342 addresses insurers and restricts them from raising premiums or denying insurance coverage based on a violation recorded by a traffic camera.

{¶ 29} In *Mendenhall*, the Ohio Supreme Court found that the speed limit statute enacted in portions of R.C. 4511.21 was a general law even though the statute contained language that clearly limits municipal authority. R.C. 4511.21(I) limits the ability of municipalities to establish their own speed limits. Pursuant to the statute, local authorities must follow specific procedures if they wish to deviate from the speed limits

codified by the statute. *Id.* Additionally, R.C. 4511.21(J) specifically provides that "local authorities shall not modify or alter the basic rule set forth in division (A) of this section or in any event authorize by ordinance a speed in excess of fifty miles per hour." Thus, if the State can constitutionally limit a municipality's ability to set its own speed limit in the interest of creating a comprehensive, statewide uniform statute regulating the speed of motor vehicles, it can also create a similar statewide uniform regulatory scheme governing traffic law photo-monitoring devices. While Am.Sub.S.B. No. 342 may contain provisions which limit municipal authority, the overriding statewide, uniform purpose of the statute clearly sets forth comprehensive "police, sanitary or similar regulations."

{¶ 30} Similarly, the Ohio Supreme Court has held that when considering whether a statute prohibiting regulation of properly licensed hazardous waste disposal facilities by a political subdivision was a valid general law, "[t]he section of law questioned *** should not be read and interpreted in isolation from the other sections [of the Revised Code Chapter] dealing with the state's control of the disposal of hazardous wastes. All such sections read in pari materia do not merely prohibit subdivisions of the state from regulation of these facilities. Conversely, the statutory scheme contained in this chapter is a comprehensive one enacted to insure that such facilities are designed, sited, and operated in the manner which best serves the statewide public interest." *Clermont Environmental Reclamation Co. v. Wiederhold*, 2 Ohio St.3d 44, 48, 442 N.E.2d 1278 (1982).

{¶ 31} Furthermore, in *Ohio Assn. of Private Detective Agencies, Inc. v. N. Olmstead*, 65 Ohio St.3d 242, the Ohio Supreme Court found that a state statute regulating security personnel was a general law which prohibited municipalities from

imposing license and/or registration fees on private investigators and security guards. The *N. Olmstead* court stated as follows:

> Considered in isolation, such a provision may fail to qualify as a general law because it prohibits a municipality from exercising a local police power while not providing for uniform statewide regulation of the same subject matter. However, consideration of R.C. 4749.09 alone is not dispositive of the present controversy. R.C. Chapter 4749 in its entirety does provide for uniform statewide regulation of security personnel ***. Accordingly, R.C. 4749.09 must be considered a general law of statewide application.

*Id.* at 245.

{¶ 32} In *Cleveland v. State*, 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, the Ohio Supreme Court upheld the state's regulation of firearms under R.C. 9.68 as a valid general law and struck down Cleveland ordinances seeking to impose stricter firearm regulations. The *Cleveland* court concluded that R.C. 9.68 was simply part of comprehensive legislative scheme regulating firearms, and "the court of appeals erred in considering 9.68 in isolation rather than as part of Ohio's comprehensive collection of firearm laws." *Id.* at ¶ 29.

{¶ 33} The Ohio Supreme Court has unequivocally held that "sections within a chapter will not be considered in isolation when determining whether a general law exists." *Mendenhall*, at ¶ 27. Read in pari material, Am.Sub.S.B. No. 342 creates a uniform, comprehensive, statewide statutory scheme regulating the use and implementation of traffic law photo-monitoring devices in Ohio. Similar to Ohio's speed statute, R.C. 4511.21, Am.Sub.S.B. No. 342 has "extensive scope and does more than

grant or limit state powers." *Id.* at ¶ 24. Contrary to Dayton's assertion, Am.Sub.S.B. No. 342 was clearly not enacted to limit municipal legislative powers. In the instant case, the trial court erred when it considered R.C. 4511.093, 4511.095, and 4511.0912 in isolation from the remainder of the statutory provisions in Am.Sub.S.B. No. 342.

{¶ 34} We note that in support of its finding that Am.Sub.S.B. No. 342 merely acts to limit municipal power in derogation of the third element of the *Canton* test, the trial court relied on the Ohio Supreme Court's holding in *Linndale v. State*, 85 Ohio St.3d 52, 706 N.E.2d 1227 (1999). In *Linndale*, the Court addressed a state statute prohibiting local authorities from issuing speeding and excess weight citations when the municipality has less than 880 yards of the freeway within its jurisdiction. Ultimately, the Supreme Court held that the state statute was not a general law because it "impermissibly infringed on the right of affected municipalities to enact or enforce traffic regulations," in violation of the home rule.

{¶ 35} However, unlike the statute in question in *Linndale* which *prohibited* the local authorities from issuing certain traffic citations, Am.Sub.S.B. No. 342 *permits* a municipality to operate a traffic law photo-enforcement system. Am.Sub.S.B. No. 342 merely sets forth certain uniform statewide procedures and regulations to be followed if a municipality voluntarily decides to implement the use of traffic cameras. Moreover, the *Linndale* court stated that the statute in question was "not part of a uniform statewide regulation on the subject of traffic law enforcement." *Id.* at 55. The statute in *Linndale* was found to only specifically affect "certain" municipalities in Ohio; as a result, the statute had no uniform statewide application and was therefore unconstitutional. *Id.* Conversely, Am.Sub.S.B. No. 342 does not target the enforcement of traffic laws in only

certain select municipalities. Simply put, Am.Sub.S.B. No. 342 uniformly applies to all municipalities in Ohio who voluntarily choose to implement traffic cameras. Accordingly, *Linndale* is clearly distinguishable from the instant case.

{¶ 36} In light of the foregoing analysis, we find that Am.Sub.S.B. No. 342 provides for a uniform, comprehensive, statewide statutory scheme regulating the use and implementation of traffic law photo-monitoring devices in Ohio, and was clearly not enacted to limit municipal legislative powers.

### Prescribes a rule of conduct on citizens generally

{¶ 37} The final issue we must address is whether Am.Sub.S.B. No. 342 "prescribe[s] a rule of conduct upon citizens generally." *Canton*, 95 Ohio St.3d 149, syllabus. As we have emphasized, the statute in question cannot be analyzed in a vacuum. Upon review, we conclude and reiterate that the statutory scheme contained in Am.Sub.S.B. No. 342 is a comprehensive one enacted to insure that traffic law photo-enforcement is implemented and regulated in the manner which best serves the statewide public interest and its citizenry. *See Clermont Environmental Reclamation Co.*, 2 Ohio St.3d 44, at 48.

{¶ 38} R.C. 4511.093, 4511.095, and 4511.0912 undoubtedly regulate the requirements and implementation procedures to which a municipality must adhere if it chooses to utilize traffic cameras to record red light/speeding violations. However, as is clear from all of the other provisions in the statute, Am.Sub.S.B. No. 342 has "extensive scope and does more than grant or limit state powers." *Mendenhall*, at ¶ 24. In its decision, the trial court acknowledged that "certain provisions of Am.Sub.S.B. No. 342 are directed at the conduct of citizens." The trial court ignored those provisions which

directly and uniformly applied to all motor vehicle operators in Ohio, and instead, narrowly focused on R.C. 4511.093, 4511.095, and 4511.0912 in isolation. The fourth element of the *Canton* test does *not* require that the statute in question prescribe a rule of conduct upon citizens *specifically*, but rather upon citizens generally. Significantly, Am.Sub.S.B. No. 342 not only addresses the responsibilities of drivers and the municipalities in which they live, but also the responsibilities of motor vehicle insurers and the manufacturers of the traffic cameras. With respect to *all* operators of motor vehicles in Ohio, the statute outlines the procedures to be followed by a driver who is issued a ticket, how to pay or dispute the violation, and finally, the procedures and rules an individual is subject to if he or she chooses to challenge the violation before an administrative body. Sections within a chapter will not be considered in isolation when determining whether a general law exists. *Mendenhall*, 117 Ohio St.3d 33, at ¶ 27. When properly analyzed in its entirety, Am.Sub.S.B. No. 342 therefore constitutes a comprehensive, uniform, statewide regulatory scheme which clearly prescribes a rule of conduct upon citizens generally.

{¶ 39} Thus, having satisfied the *Canton* test, we find that Am.Sub.S.B. No. 342 constitutes a "general law" and does not violate the Home Rule Amendment of the Ohio Constitution. Dayton has failed to meet its burden of establishing beyond a reasonable doubt that Am.Sub.S.B. No. 342 in any way offends the Ohio Constitution.

{¶ 40} The State's first and second assignments of error are sustained.

{¶ 41} Both of the State's assignments of error having been sustained, the judgment of the trial court is reversed, and the permanent injunction is vacated.

. . . . . . . . . .

FROELICH, P.J. and HALL, J., concur.

Copies mailed to:

John C. Musto
Halli Brownfield Watson
Nicole M. Koppitch
Hon. Barbara P. Gorman