[Cite as *Springfield v. State*, 2016-Ohio-725.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| CITY OF SPRINGFIELD, OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 2015-CA-77 |
| | : | |
| v. | : | T.C. NO. 15CV202 |
| | : | |
| STATE OF OHIO | : | (Civil appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ____26th____ day of ____February____, 2016.

. . . . . . . . . . .

JEROME M. STROZDAS, Atty, Reg. No. 0003263, 76 East High Street, Springfield, Ohio 45502
     Attorney for Plaintiff-Appellant

HALLI BROWNFIELD WATSON, Atty. Reg. No. 0082466 and NICOLE M. KOPPITCH, Atty. Reg. No. 0082129, 30 East Broad Street, 16th floor, Columbus, Ohio 43215
     Attorneys for Defendant-Appellee

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} Plaintiff-appellant City of Springfield (hereinafter "Springfield") appeals a decision of the Clark County Court of Common Pleas, Civil Division, denying its motion for summary judgment and granting the motion for summary judgment of defendant-appellee the State of Ohio (hereinafter "the State"). Springfield filed a timely notice of

appeal with this Court on August 20, 2015.

{¶ 2} On March 18, 2015, Springfield filed a "Complaint," in which it challenged the constitutionality of Amended Substitute Senate Bill No. 342 (hereinafter "Am.Sub.S.B. No. 342") on the grounds that it violates Article XVIII, Section 3 of the Ohio Constitution, otherwise known as the "Home Rule Amendment." Am.Sub.S.B. No. 342 served to amend and enact several statutory provisions governing traffic law photo-monitoring devices. *See* R.C. 4511.092 – R.C. 4511.0914.

{¶ 3} In its complaint, Springfield specifically challenged the requirement in R.C. 4511.093(B)(1) that a law enforcement officer be present at the location of any traffic law photo-monitoring device when it is being operated. Springfield also challenged R.C. 4511.095(A)(1) and (2), the provisions which require that a local authority must conduct a safety study and public information campaign for the location under consideration for the placement of a new device before any new photo-monitoring equipment can be deployed. Springfield further asserted that R.C. 4511.0912(A) and (B) violated the home rule amendment because it prohibits municipal authorities from issuing speeding tickets for violations recorded by traffic law photo-monitoring devices unless the individual was driving more than six miles per hour above the speed limit in a school zone and/or park, or ten or more miles per hour above the speed limit in any other location. Springfield argued that the aforementioned provisions of Am.Sub.S.B. No. 342 "interfere with the City's power of 'local self-government' and with the City's exercise of its police power in a manner 'not in conflict with general laws.' " We note that although Springfield's complaint only references five specific provisions which it finds objectionable, it sought a declaratory judgment that all of Am.Sub.S.B. No. 342 violates the home rule amendment,

and is therefore unconstitutional.

{¶ 4} On May 26, 2015, Springfield filed its motion for summary judgment. In addition to arguing that R.C. 4511.093(B)(1), 4511.095, and R.C. 4511.0912 were unconstitutional as it had in its complaint, Springfield asserted that R.C. 4511.0911, R.C. 4511.092, R.C. 4511.094, R.C. 4511.096, R.C. 4511.097, and R.C. 4511.099 were unconstitutional "incursions" into its power of local self-government. Springfield also argued that Am.Sub.S.B. No. 342 is not a general law because it does not "prescribe a rule of conduct for citizens generally," but only serves to place unconstitutional limits on a municipality's legislative ability. Finally, Springfield asserted that the only provisions of Am.Sub.S.B. No. 342 that could survive being severed were R.C. 3937.411, R.C. 4511.010, and R.C. 4511.204(C)(2). According to Springfield, the remainder of Am.Sub.S.B. No. 342 should be stricken as unconstitutional.

{¶ 5} Shortly thereafter on June 9, 2015, the State filed its motion for summary judgment and memorandum contra in which it argued that Am.Sub.S.B. No. 342 is a general law, and therefore not subject to the home rule amendment to the Ohio Constitution. As such, the State asserted that Am.Sub. S.B. No. 342 was constitutionally permissible.

{¶ 6} On August 17, 2015, the trial court issued an entry overruling Springfield's motion for summary judgment. In the same entry, the trial court granted the State's motion for summary judgment, concluding that Am.Sub.S.B. No. 342 was constitutionally valid in its entirety, and therefore did not violate the home rule provisions of the Ohio Constitution.

{¶ 7} It is from this judgment that Springfield now appeals.

**The Springfield Ordinance / No. 05-41**

{¶ 8} On February 15, 2005, Springfield enacted an ordinance authorizing an "automated traffic control photographic system" (ATCPS) for placement at intersections throughout the city. The system only provides for the enforcement of red light violations. The ordinance is codified in Section 303.09 of the Codified Ordinances of the City of Springfield, Ohio. Springfield states that the purpose of the traffic law photo-monitoring system is to reduce the number of red light violations and automobile accidents in the city. Springfield also asserts that the system helps to conserve limited police resources. According to Springfield, there are approximately ten intersections where red light cameras are operating throughout the city.

{¶ 9} Springfield maintains that the ordinance creates a system which is civil in nature, not criminal. The ordinance provides for civil enforcement imposing monetary fines upon the owners of vehicles who commit red light violations. Offenders who are recorded by the ATCPS are not issued criminal traffic citations, and offenses are not adjudicated by the Springfield municipal court. Offenders are not assessed points on their driving records, and Springfield has created and implemented an administrative hearing process presided over by an independent third party not employed by the City of Springfield or the police department. The ordinance states, however, that the Springfield Police Division shall administer the ATCPS program.

{¶ 10} Contained in the notice of liability sent to the offender are the following: 1) the images of the vehicle and its license plate; 2) the ownership records of the vehicle; 3) the nature of the violation and the date upon which the offense occurred; 4) the amount

of the civil penalty imposed; and 5) a signed statement by a Springfield Police Officer stating that a violation had occurred based upon review of the recorded images. The recorded images and speed measurement readings taken from the ATCPS device are considered under the ordinance to be prima facie evidence of a violation. The ordinance further provides a means by which the owner of a vehicle can dispute a violation if he or she was not driving the vehicle at the time that the ATCPS recorded a violation. Owners choosing to appeal must send a written request to the Springfield Police Department within fifteen days of receiving the notice of liability. If an administrative hearing is held, the standard of proof utilized by the hearing officer is preponderance of the evidence.

**Amended Substitute Senate Bill No. 342**

{¶ 11} Am.Sub.S.B. No. 342 was signed into law on December 19, 2014, and became effective shortly thereafter on March 23, 2015. The following Revised Code sections were enacted as a result of Am.Sub. S.B. No. 342's passage: 4511.092; 4511.093; 4511.095; 4511.096; 4511.097; 4511.098; 4511.099; 4511.0910; 4511.0911; 4511.0912; 4511.0913; 4511.0914; and 4511.204(C)(2). Viewed collectively, the new sections provide a comprehensive definition section (R.C. 4511.092) and expand upon existing requirements for municipalities who employ the use of traffic photo-monitoring systems. We note that R.C. 4511.094 was already in existence prior to the passage of Am.Sub.S.B. No. 342, but parts of the section were updated by the new law including requirements for signs informing drivers that traffic law photo-monitoring devices are being operated in a particular area.

{¶ 12} R.C. 4511.093(A) begins by stating that "[a] local authority *may* utilize a

traffic law photo-monitoring device for the purpose of detecting traffic law violations." Clearly, the initial decision whether to implement the use of traffic cameras is left to the individual municipality. Once the decision is made to install traffic cameras, their continued use becomes subject to the statewide conditions enunciated in the remainder of Am.Sub.S.B. No. 342. Specifically, R.C. 4511.093(B)(1) provides that if a municipality implements the use of a traffic law photo-monitoring device, a law enforcement officer must be present at the location of the device while it is being operated. R.C. 4511.093(B)(2) simply states that a law enforcement officer who is present while the photo-monitoring device is operating can issue a ticket for any violation he or she personally witnesses. Alternatively, if the officer who is present did not issue a ticket for the observed violation, the municipality may issue a ticket for a civil violation if it was recorded by the photo-monitoring device. R.C. 4511.093(B)(3).

{¶ 13} R.C. 4511.095 requires municipalities to perform certain pre-implementation procedures before deploying a traffic law photo-monitoring device that was not in existence at the time that Am.Sub.S.B. No. 342 became effective. Specifically, R.C. 4511.095(A)(1) requires a municipality to conduct a safety study of intersections or locations under consideration for placement of a traffic camera. The municipality is also required to conduct a public information campaign to inform drivers about the use of traffic cameras at new system locations prior to their implementation at the new location. R.C. 4511.095(A)(2). Municipalities are also required to publish at least one notice in a local newspaper of general circulation regarding their intent to use traffic cameras at new locations, the locations of the traffic cameras, and the date on which the first traffic camera will become operational. R.C. 4511.095(A)(3). Additionally,

when a new traffic camera is deployed, the municipality must "refrain from levying any civil fines" for violations detected by the device for at least thirty days after it becomes operational. R.C. 4511.095(A)(4). During the thirty day interim after the traffic camera becomes operational, the municipality may send a warning notice to drivers who have committed recorded traffic violations. *Id.*

{¶ 14} R.C. 4511.0912(A) states that a civil ticket may not be issued for a violation recorded by a traffic camera located in a school zone or local park unless the vehicle in question is captured traveling at a speed that exceeds the posted speed limit by at least six miles per hour. In all other locations, the vehicle must be recorded by the traffic camera traveling at least ten miles over the posted speed limit for a civil ticket to issue. R.C. 4511.0912(B).

{¶ 15} Am.Sub.S.B. No. 342 also enacted the following additional regulations:

**R.C. 3937.411** – This section instructs insurers that they may not deny coverage and/or raise the insurance premium of any individual who receives a civil ticket based on a violation recorded by a traffic camera.

**R.C. 4511.096(A)** – This section contains a requirement that a law enforcement officer examine the evidence of an alleged violation recorded by a traffic camera in order to determine whether a violation has in fact occurred. If a violation is found to have occurred, the officer may use the vehicle's license plate number to identify the registered owner.

**R.C. 4511.096(B)** – This section states that the fact that a person is found to be the registered owner of the vehicle is prima facie evidence that the person was operating the vehicle at the time the traffic violation occurred.

**R.C. 4511.096(C)** and **(D)** – These sections contain updated requirements for the standards with respect to the issuance of civil tickets for violations recorded by traffic cameras.

**R.C. 4511.097** – This section explains what information should be included in the civil ticket issued to an offender for a violation recorded by a traffic camera and states that the local authority is required to send the ticket no later than thirty days after the violation.   Significantly, this section mandates that the officer, required to be present by R.C. 4511.093(B)(1) whenever traffic cameras are in use, must include his name and badge number in the ticket sent to the offender. R.C. 4511.097(B)(7).

**R.C. 4511.098** – This section sets out the options for paying or challenging the civil ticket issued to a person for a violation recorded by a traffic camera.

**R.C. 4511.099** – This section sets forth the procedure for a hearing, the standard of proof (preponderance of the evidence), and affirmative defenses that apply if an alleged offender chooses to challenge a ticket issued based on the recorded image of a violation from a traffic camera.

**R.C. 4511.0911** – This section contains requirements for the manufacturer of the traffic camera to provide to the local authority the maintenance record for each traffic camera used in the municipality, and an annual certificate of proper operation for each traffic camera.


### Standard of Review

{¶ 16} As this Court has previously noted:

When reviewing a summary judgment, an appellate court conducts a de novo review. *Village of Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "De Novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Harris v. Dayton Power & Light Co.*, 2d Dist. Montgomery No. 25636, 2013–Ohio–5234, ¶ 11 (quoting *Brewer v. Cleveland City Schools Bd. [o]f Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997) (citing *Dupler v. Mansfield Journal Co* ., 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980)). Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. Of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

Civ. R. 56 defines the standard to be applied when determining whether a summary judgment should be granted. *Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 463, 880 N.E.2d 88 (2008). Summary judgment is proper when the trial court finds: "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the Motion for Summary Judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Fortune v. Fortune*, 2d Dist. Greene No. 90–CA–96, 1991 WL 70721, *1 (May 3, 1991) (quoting *Harless v. Willis Day Warehous[ing] Co.*, 54 Ohio St.2d 64, 67, 375 N.E.2d 45

(1978)). The initial burden is on the moving party to show that there is no genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292–93, 662 N.E.2d 264 (1996). Once a moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dotson v. Freight Rite, Inc.*, 2d Dist. Montgomery No. 25495, 2013–Ohio–3272, ¶ 41 (citation omitted).

*Cincinnati Ins. Co. v. Greenmont Mut. Hous. Corp.*, 2d Dist. Montgomery No. 25830, 2014-Ohio-1973, ¶ 17-18.

{¶ 17} Because they are interrelated, Springfield's first and second assignments of error will be discussed together as follows:

{¶ 18} "THE TRIAL COURT ERRED BY NOT GRANTING THE CITY'S MOTION FOR SUMMARY JUDGMENT."

{¶ 19} "THE TRIAL COURT ERRED BY GRANTING THE STATE'S MOTION FOR SUMMARY JUDGMENT."

{¶ 20} In its first and second assignments, Springfield contends that the trial court erred by denying its motion for summary judgment and granting the State summary judgment on its claims regarding the constitutionality of Am.Sub.S.B. No. 342. Specifically, Springfield argues that several provisions of Am.Sub.S.B. No. 342 are unconstitutional because they violate its power of self-government. Springfield also argues that Am.Sub.S.B. No. 342 is not a general law because it does not prescribe a rule of conduct for citizens generally and is not an exercise of the police power of the State. Lastly, Springfield argues that the only sections of Am.Sub.S.B. No. 342 that can be severed are R.C. 3937.411 and R.C. 4511.010 because the remainder of the sections

are unconstitutional.

{¶ 21} Initially, we recognize the "fundamental principle that a court must 'presume the constitutionality of lawfully enacted legislation.' " *Cleveland v. State*, 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, ¶ 6, citing *Arnold v. Cleveland*, 67 Ohio St.3d 35, 38, 616 N.E.2d 163 (1993). Therefore, we begin with the presumption that Am.Sub.S.B. No. 342 (specifically, R.C. 4511.093(B)(1) & (3), 4511.095, and 4511.0912) is constitutional. Accordingly, the statute "will not be invalidated unless the challenger establishes that it is unconstitutional beyond a reasonable doubt." *Id.* at ¶ 6.

{¶ 22} Under the Home Rule Amendment to the Ohio Constitution, "[m]unicipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, *as are not in conflict with general laws.*" Article XVIII, Section 3. This amendment provides municipalities with the "broadest possible powers of self-government in connection with all matters which are strictly local and do not impinge upon matters which are of a state-wide nature or interest." *State ex rel. Morrison v. Beck Energy Corporation*, 143 Ohio St.3d 271, 2015-Ohio-485, 37 N.E.3d 128, ¶ 14, citing *State ex rel. Hackley v. Edmonds*, 150 Ohio St. 203, 212, 80 N.E.2d 769 (1948). Therefore, a municipal ordinance must yield to a state statute if 1) the ordinance is an exercise of police power, rather than of local self-government; 2) that statute is a general law; and 3) the ordinance is in conflict with the statute.

{¶ 23} Neither party disputes that Springfield Ordinance No. 05-41, enacting an automated photo-enforcement program, was lawfully enacted pursuant to its constitutionally protected home rule powers. Recently, in *Walker v. Toledo*, 143 Ohio

St.3d 420, 2014-Ohio-5461, 39 N.E.3d 474, ¶ 3, the Ohio Supreme Court reaffirmed its holding in *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, that municipalities, such as Springfield, have home rule authority under Article XVIII of the Ohio Constitution to impose civil liability on traffic violators through the use of a photo enforcement system for red light violations. We note that Springfield does not utilize speed-monitoring cameras or mobile photo-monitoring devices. To the extent Springfield challenges Am.Sub.S.B. No. 342 regarding its provisions implementing the use of speed cameras and mobile photo-monitoring devices, it lacks standing to do so since its cameras are only designed to detect red-light violations and nothing more.

### Exercise of Police Power or Exercise of Local Self-Government

{¶ 24} In *Dayton v. State*, 2015-Ohio-3160, 36 N.E.3d 235 (2d Dist.), we recently found that the trial court erred when it granted partial summary judgment to the City of Dayton, finding that certain provisions of Am.Sub.S.B. No. 342 unconstitutionally violated its home rule powers. We concluded that when properly analyzed in its entirety, Am.Sub.S.B. No. 342 constitutes a comprehensive, uniform, statewide regulatory scheme which clearly prescribes a rule of conduct upon citizens generally. Therefore, we found that Am.Sub.S.B. No. 342 is a general law that does not violate the "Home Rule Amendment" in the Ohio Constitution.

{¶ 25} In *Dayton*, however, the only issue before this Court was whether Am.Sub.S.B. No. 342 was a general law. Dayton acknowledged that its traffic camera ordinance was an exercise of police power. Additionally, Dayton acknowledged that its traffic camera ordinance was in conflict with Am.Sub.S.B. No. 342. In the instant case,

Springfield argues that its traffic camera ordinance is not an exercise of police power, but is instead, an exercise of local self-government. Accordingly, that is where our analysis begins.

{¶ 26} "If an allegedly conflicting city ordinance relates solely to self-government, the analysis stops, because the Constitution authorizes a municipality to exercise all powers of local self-government within its jurisdiction." *Am. Financial Servs. Assn. v. Cleveland,* 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 23. An ordinance created under the power of local self-government must relate "solely to the government and administration of the internal affairs of the municipality." *Beachwood v. Cuyahoga Cty. Bd. of Elections,* 167 Ohio St. 369, 148 N.E.2d 921 (1958), paragraph one of the syllabus. Conversely, the police power allows municipalities to enact regulations only to protect the public health, safety, or morals, or the general welfare of the public. *See Downing v. Cook*, 69 Ohio St.2d 149, 150, 431 N.E.2d 995 (1982). While local self-government ordinances are protected under the Home Rule Amendment, police-power ordinances "must yield in the face of a general state law." *Am. Financial Servs. Assn.,* 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 23.

{¶ 27} In *Tolliver v. Newark* , 145 Ohio St. 517, 62 N.E.2d 357 (1945), overruled in part on other grounds in *Fankhauser v. Mansfield* , 19 Ohio St.2d 102, 110, 249 N.E.2d 789 (1969), the Ohio Supreme Court held that the regulation of traffic by the placement of stop signs was an exercise of the police power. *Id*. at paragraph three of the syllabus. The court came to the same conclusion for an ordinance regulating truck routes throughout a city, *Niles v. Dean*, 25 Ohio St.2d 284, 268 N.E.2d 275 (1971), paragraph one of the syllabus, and a zoning ordinance regulating the accessibility of off-street

parking because it was directed at the "protection of pedestrians and drivers, elimination of traffic congestion and reduction of air and noise pollution," *Brown v. Cleveland*, 66 Ohio St.2d 93, 96, 420 N.E.2d 103 (1981). The Ohio Supreme Court eventually concluded that traffic ordinances in general arise from the police power. *See Linndale v. State*, 85 Ohio St.3d 52, 53–54, 706 N.E.2d 1227 (1999), citing *Geauga Cty. Bd. of Commrs.,* 67 Ohio St.3d 579, 583, 621 N.E.2d 696 (1993). "It is now clear that the regulation of traffic is an exercise of police power that relates to public health and safety as well as the general welfare of the public." *Marich v. Bob Bennett Constr. Co.,* 116 Ohio St.3d 553, 2008-Ohio-92, 880 N.E.2d 906, ¶ 14.

{¶ 28} Upon review, we conclude that Springfield's traffic camera ordinance is clearly an exercise of its police power. Springfield's ordinance does not "relate solely to the government and administration of the internal affairs of the municipality," but rather enacts regulations that affect public safety. *Marich*, ¶ 11. Springfield acknowledges that the ordinance was enacted "to address that public danger occasioned by motorists running red lights. *** The Commission declared its purpose of significantly reducing red light violations and related accidents." It is also important to note that in its ordinance, Springfield labels the red-light cameras as its "Automated *Traffic Control* Photographic System." According to Springfield's City Manager, James Bodenmiller, the "prime motivation" in enacting the traffic camera ordinance was to improve safety. The goal of improving safety is repeated in the preamble of Springfield's traffic camera ordinance.

{¶ 29} Springfield's traffic camera ordinance was designed to regulate individuals who violate the city's red-light traffic laws at its busiest intersections. These requirements serve to protect drivers and pedestrians who might be traveling on those

roads and generally affect traffic flow in the municipality. Thus the ordinance is an exercise of that jurisdiction's police power that may be invalidated if it conflicts with the general laws of this state.

## General Law

{¶ 30} As previously noted, we have recently held that Am.Sub.S.B. No. 342 is a general law in *Dayton v. State*, 2015-Ohio-3160, 36 N.E.3d 235 (2d Dist.), wherein we stated in pertinent part:

> *** "A general law has been described as one which promotes statewide uniformity." *Ohio Assn. of Private Detective Agencies, Inc. v. N. Olmstead*, 65 Ohio St.3d 242, 244, 602 N.E.2d 1147 (1965). Furthermore, general laws are those "enact[ed] to safeguard the peace, health, morals, and safety, and to protect the property of the people of the state." *Schneiderman v. Sesanstein*, 121 Ohio St. 80, 83, 167 N.E. 158 (1929). "Once a matter has become of such general interest that it is necessary to make it subject to statewide control as to require uniform statewide regulation, the municipality can no longer legislate in the field so as to conflict with the state." *State ex rel. McElroy v. Akron*, 173 Ohio St.3d 189, 194, 181 N.E.2d 26 (1962).
>
> A statute qualifies as a general law if it satisfies four criteria. The statute must: 1) be part of a statewide and comprehensive legislative enactment; 2) apply to all parts of the state alike and operate uniformly throughout the state; 3) set forth police, sanitary or similar regulations,

rather than purport only to grant or limit legislative power of a municipal corporation to prescribe those regulations; and 4) prescribe a rule of conduct upon citizens generally. *Mendenhall* [*v. Akron,* 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255], at ¶ 20; *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, syllabus.

     \*\*\*

The third element of the *Canton* test requires that for a statute to be considered a general law, it must set forth police, sanitary, or similar regulations, instead of merely granting or limiting a municipality's power to create such regulations. Am.Sub.S.B. No. 342 regulates the statewide use of traffic cameras to record red light/speeding violations. The statute is a comprehensive legislative enactment which applies to all parts of the state and is operated uniformly throughout.

     \*\*\*

R.C. 4511.093, 4511.095, and 4511.0912 undoubtedly regulate the requirements and implementation procedures to which a municipality must adhere if it chooses to use traffic cameras to record red light/speeding violations. However, as is clear from the other provisions listed above, Am.Sub.S.B. No. 342 has "extensive scope and does more than grant or limit state powers." *Mendenhall*, at ¶ 24. In addition to regulating municipal authority, the other provisions of Am.Sub.S.B. No. 342 also establish laws and procedures for motorists to follow if they are recorded by the traffic cameras committing a red light or speeding violation. Moreover, the

statute establishes requirements for the manufacturer of the traffic camera regarding maintenance and annual upkeep of the device. Finally, Am.Sub.S.B. No. 342 addresses insurers and restricts them from raising premiums or denying insurance coverage based on a violation recorded by a traffic camera.

In *Mendenhall*, the Ohio Supreme Court found that the speed limit statute enacted in portions of R.C. 4511.21 was a general law even though the statute contained language that clearly limits municipal authority. R.C. 4511.21(I) limits the ability of municipalities to establish their own speed limits. Pursuant to the statute, local authorities must follow specific procedures if they wish to deviate from the speed limits codified by the statute. *Id.* Additionally, R.C. 4511.21(J) specifically provides that "local authorities shall not modify or alter the basic rule set forth in division (A) of this section or in any event authorize by ordinance a speed in excess of fifty miles per hour." Thus, if the State can constitutionally limit a municipality's ability to set its own speed limit in the interest of creating a comprehensive, statewide uniform statute regulating the speed of motor vehicles, it can also create a similar statewide uniform regulatory scheme governing traffic law photo-monitoring devices. While Am.Sub.S.B. No. 342 may contain provisions which limit municipal authority, the overriding statewide, uniform purpose of the statute clearly sets forth comprehensive "police, sanitary or similar regulations."

Similarly, the Ohio Supreme Court has held that when considering

whether a statute prohibiting regulation of properly licensed hazardous waste disposal facilities by a political subdivision was a valid general law, "[t]he section of law questioned *** should not be read and interpreted in isolation from the other sections [of the Revised Code Chapter] dealing with the state's control of the disposal of hazardous wastes.  All such sections read in pari materia do not merely prohibit subdivisions of the state from regulation of these facilities.  Conversely, the statutory scheme contained in this chapter is a comprehensive one enacted to insure that such facilities are designed, sited, and operated in the manner which best serves the statewide public interest." *Clermont Environmental Reclamation Co. v. Wiederhold*, 2 Ohio St.3d 44, 48, 442 N.E.2d 1278 (1982).

***

The Ohio Supreme Court has unequivocally held that "sections within a chapter will not be considered in isolation when determining whether a general law exists." *Mendenhall*, at ¶ 27.  Read in pari material, Am.Sub.S.B. No. 342 creates a uniform, comprehensive, statewide statutory scheme regulating the use and implementation of traffic law photo-monitoring devices in Ohio.  Similar to Ohio's speed statute, R.C. 4511.21, Am.Sub.S.B. No. 342 has "extensive scope and does more than grant or limit state powers." *Id*. at ¶ 24.  Contrary to Dayton's assertion, Am.Sub.S.B. No. 342 was clearly not enacted to limit municipal legislative powers.  In the instant case, the trial court erred when it considered R.C. 4511.093, 4511.095, and 4511.0912 in isolation from the remainder of the

statutory provisions in Am.Sub.S.B. No. 342.

We note that in support of its finding that Am.Sub.S.B. No. 342 merely acts to limit municipal power in derogation of the third element of the *Canton* test, the trial court relied on the Ohio Supreme Court's holding in *Linndale v. State*, 85 Ohio St.3d 52, 706 N.E.2d 1227 (1999). In *Linndale*, the Court addressed a state statute prohibiting local authorities from issuing speeding and excess weight citations when the municipality has less than 880 yards of the freeway within its jurisdiction. Ultimately, the Supreme Court held that the state statute was not a general law because it "impermissibly infringed on the right of affected municipalities to enact or enforce traffic regulations," in violation of the home rule.

However, unlike the statute in question in *Linndale* which *prohibited* the local authorities from issuing certain traffic citations, Am.Sub.S.B. No. 342 *permits* a municipality to operate a traffic law photo-enforcement system. Am.Sub.S.B. No. 342 merely sets forth certain uniform statewide procedures and regulations to be followed if a municipality voluntarily decides to implement the use of traffic cameras. Moreover, the *Linndale* court stated that the statute in question was "not part of a uniform statewide regulation on the subject of traffic law enforcement." *Id.* at 55. The statute in *Linndale* was found to only specifically affect "certain" municipalities in Ohio; as a result, the statute had no uniform statewide application and was therefore unconstitutional. *Id.* Conversely, Am.Sub.S.B. No. 342 does not target the enforcement of traffic laws in only certain select municipalities.

Simply put, Am.Sub.S.B. No. 342 uniformly applies to all municipalities in Ohio who voluntarily choose to implement traffic cameras. Accordingly, *Linndale* is clearly distinguishable from the instant case.

In light of the foregoing analysis, we find that Am.Sub.S.B. No. 342 provides for a uniform, comprehensive, statewide statutory scheme regulating the use and implementation of traffic law photo-monitoring devices in Ohio, and was clearly not enacted to limit municipal legislative powers.

\*\*\*

The final issue we must address is whether Am.Sub.S.B. No. 342 "prescribe[s] a rule of conduct upon citizens generally." *Canton*, 95 Ohio St.3d 149, syllabus. As we have emphasized, the statute in question cannot be analyzed in a vacuum. Upon review, we conclude and reiterate that the statutory scheme contained in Am.Sub.S.B. No. 342 is a comprehensive one enacted to insure that traffic law photo-enforcement is implemented and regulated in the manner which best serves the statewide public interest and its citizenry. *See Clermont Environmental Reclamation Co.*, 2 Ohio St.3d 44, at 48.

R.C. 4511.093, 4511.095, and 4511.0912 undoubtedly regulate the requirements and implementation procedures to which a municipality must adhere if it chooses to utilize traffic cameras to record red light/speeding violations. However, as is clear from all of the other provisions in the statute, Am.Sub.S.B. No. 342 has "extensive scope and does more than

grant or limit state powers." *Mendenhall*, at ¶ 24. In its decision, the trial court acknowledged that "certain provisions of Am.Sub.S.B. No. 342 are directed at the conduct of citizens." The trial court ignored those provisions which directly and uniformly applied to all motor vehicle operators in Ohio, and instead, narrowly focused on R.C. 4511.093, 4511.095, and 4511.0912 in isolation. The fourth element of the *Canton* test does *not* require that the statute in question prescribe a rule of conduct upon citizens *specifically*, but rather upon citizens generally. Significantly, Am.Sub.S.B. No. 342 not only addresses the responsibilities of drivers and the municipalities in which they live, but also the responsibilities of motor vehicle insurers and the manufacturers of the traffic cameras. With respect to *all* operators of motor vehicles in Ohio, the statute outlines the procedures to be followed by a driver who is issued a ticket, how to pay or dispute the violation, and finally, the procedures and rules an individual is subject to if he or she chooses to challenge the violation before an administrative body. Sections within a chapter will not be considered in isolation when determining whether a general law exists. *Mendenhall*, 117 Ohio St.3d 33, at ¶ 27. When properly analyzed in its entirety, Am.Sub.S.B. No. 342 therefore constitutes a comprehensive, uniform, statewide regulatory scheme which clearly prescribes a rule of conduct upon citizens generally.

Thus, having satisfied the *Canton* test, we find that Am.Sub.S.B. No. 342 constitutes a "general law" and does not violate the Home Rule Amendment of the Ohio Constitution. Dayton has failed to meet its burden

of establishing beyond a reasonable doubt that Am.Sub.S.B. No. 342 in any way offends the Ohio Constitution.

*Dayton v. State*, 2015-Ohio-3160, at ¶s 22-39.

{¶ 31} In light of our previous holding in *Dayton*, we find no merit to Springfield's argument that Am.Sub.S.B. No. 342 is not a general law. Contrary to Springfield's assertions, Am.Sub.S.B. No. 342 was not enacted to limit municipal powers, and the statute constitutes a comprehensive, uniform, statewide regulatory scheme which clearly prescribes a rule of conduct upon citizens generally. Like the City of Dayton before it, Springfield has failed to meet its burden of establishing beyond a reasonable doubt that Am.Sub.S.B. No. 342 in any way offends the Ohio Constitution.

**Severance**

{¶ 32} Lastly, Springfield argues that the only provisions of Am.Sub.S.B. No. 342 that can be severed are R.C. 3937.411 and R.C. 4511.010 because the remainder of the sections are unconstitutional. R.C. 1.50 provides that statutory provisions are presumptively severable: "If any provision of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end are severable."

{¶ 33} Determining whether a provision is severable requires application of the following three-part inquiry:

(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the

unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause is taken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?

*State ex rel. Sunset Estate Properties, L.L.C. v. Lodi*, 142 Ohio St.3d 351, 2015-Ohio-790, 30 N.E.3d 934, ¶ 17.

**{¶ 34}** Here, we have found Am.Sub.S.B. No. 342 to be constitutional in its entirety. Therefore, we need not determine whether any provision of Am.Sub.S.B. No. 342 is subject to severability because the issue is moot. Upon review, we conclude that the trial court did not err when it granted the State's motion for summary judgment.

**{¶ 35}** Springfield's first and second assignments of error are overruled.

**{¶ 36}** Both of Springfield's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies mailed to:

Jerome M. Strozdas
Halli Brownfield Watson
Nicole M. Koppitch
Hon. Douglas M. Rastatter