[Cite as *Toledo v. Ohio*, 2016-Ohio-4906.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

City of Toledo

Court of Appeals No. L-15-1121

    Appellee

Trial Court No. CI0201501828

v.

State of Ohio, et al.

**DECISION AND JUDGMENT**

    Appellants

Decided: July 8, 2016

* * * * *

Adam W. Loukx, Director of Law, and Jeffrey B. Charles,
Senior Attorney, for appellee.

Michael DeWine, Ohio Attorney General, Nicole M. Koppitch,
Halli Brownfield Watson and Jordan Berman, Assistant Attorneys
General, for appellants.

Andrew R. Mayle, Jeremiah S. Ray and Ronald J. Mayle, for
amicus curiae Custom Seal, Inc., Bradley L. Walker and Kraig
Kutschbach.

* * * * *

**JENSEN, P.J.**

{¶ 1} Defendants-appellants, the state of Ohio and Ohio Attorney General Michael

DeWine (collectively referred to as "the state"), appeal the April 27, 2015 judgment of

the Lucas County Court of Common Pleas, denying their motion for summary judgment and granting, in part, a motion for summary judgment filed by plaintiff-appellee, the city of Toledo ("the city"). For the reasons that follow, we affirm.

## I. Background

{¶ 2} On February 12, 2008, the city enacted Toledo Municipal Code 313.12, authorizing an automated red light and speeding system in Toledo. Under Toledo Municipal Code 313.12, civil penalties are assessed against the owner or driver of a vehicle for red light and speed violations captured by photo-enforcement devices. The program is administered by the city's Division of Transportation, police department, and law department. In the event that the camera detects a red light or speeding violation, a "notice of liability" is processed by the city and forwarded to the vehicle-owner's address listed in the state's motor vehicle registration database. The owner of the vehicle has 21 days from the date of the notice of liability to submit evidence that someone else was driving the vehicle or that it was stolen, to pay a $120 civil penalty, or to file a notice of appeal with the hearing officer. The city may assess an additional penalty of $25 or impound the vehicle for failure to timely respond to the notice of liability, and the right to contest the citation is waived. Citations issued under the program are not registered under the offender's operating record and no points are assigned under R.C. 4507.021.

{¶ 3} On December 19, 2014, the Ohio legislature signed into law Am.Sub.S.B. No. 342, revising and enacting a number of statutory provisions governing the use of traffic law photo-monitoring devices. It took effect on March 23, 2015. The

2.

photo-monitoring system established under S.B. 342 differs from the city's program in a number of important respects. For instance:

- Under R.C. 4511.093(B)(1), citations issued under S.B. 342 are valid "only if a law enforcement officer is present at the location of the device at all times during the operation of the device."

- Under R.C. 4511.094(A)(1), a municipality wishing to use a photo-monitoring device must erect signs along its border informing inbound traffic of the usage of traffic law photo-monitoring devices within the municipality. Under R.C. 4511.094(A)(2), signs must also be erected at every photo-monitoring location informing drivers of the presence of the photo-monitoring device. The statute provides details about the positioning of the signs.

- Under R.C. 4511.095, the municipality must complete a three-year safety study of any intersection at which the deployment of a new traffic law photo-monitoring device is proposed. Following completion of this study, a municipality wishing to place a new photo-monitoring device must conduct a public information campaign to inform drivers of the use of photo-monitoring devices, and must publish such notice in a local newspaper of general circulation. Additionally, a 30-day "public awareness warning" applies to new sites, during which drivers may not be fined for a

3.

traffic law violation based upon evidence gathered by a photo-monitoring device.

- Under R.C. 4511.0912 citations for speeding violations detected by automated photo-monitoring systems may not be issued unless the vehicle was traveling at least six miles per hour over the speed limit in a school zone or at least ten miles per hour over the speed limit elsewhere.

{¶ 4} In light of the additional requirements imposed on municipalities by the General Assembly under S.B. 342, the city filed its complaint in the present action on March 13, 2015. In its complaint, the city alleged that S.B. 342 is an unconstitutional infringement of its right to self-governance under Article XVIII, Section 3, of the Ohio Constitution ("home rule provision"). The city requested injunctive relief and a stay of the enforcement of S.B. 342 until such time as the trial court could determine its constitutionality.

{¶ 5} The trial court conducted a hearing on the city's request for a preliminary injunction on March 20, 2015. Two days later, it issued its decision, granting the city's request for a preliminary injunction, in part, and enjoining the enforcement of certain statutory sections pending resolution of the city's request for a permanent injunction.

{¶ 6} On March 23, 2015, the city and the state filed cross-motions for summary judgment. In its motion, the city argued that S.B. 342 impermissibly limits the power of municipalities to enact and enforce their own legislation in contravention of the home

4.

rule provision. The state countered by positing that S.B. 342 does not violate the home rule provision because it is a general law.

{¶ 7} In a decision dated April 27, 2015, the trial court concluded that a number of the statutory provisions enacted under S.B. 342 are unconstitutional under the home rule provision. Accordingly, it denied the state's motion for summary judgment and granted, in part, the city's motion for summary judgment, ultimately enjoining the enforcement of:

- R.C. 4511.093(B)(1) and (3) (requiring police officer presence during the operation of photo-monitoring devices);

- R.C. 4511.095 (mandating the completion of a safety study prior to implementation of photo-monitoring system);

- R.C. 4511.096 (setting forth various law enforcement officer duties);

- R.C. 4511.097 (specifying the requirements for tickets issued under an automated traffic control program);

- R.C. 4511.098 (indicating the procedure that should be followed by one who receives a ticket alleging a violation of the traffic law under the automated traffic control program);

- R.C. 4511.099 (providing for an administrative hearing for those wishing to appeal a citation under the automated traffic control program);

5.

- R.C. 4511.0911(A) and (B) (requiring manufacturers to provide maintenance records for photo-monitoring devices, along with a certificate of proper operation that attests to the accuracy of such devices); and

- R.C. 4511.0912 (specifying that speed limit violations are only punishable if the speed exceeds the posted limit by at least six miles per hour in a school zone and ten miles per hour elsewhere).

{¶ 8} Following the trial court's decision on the parties' cross-motions for summary judgment, the state filed its timely notice of appeal, assigning the following errors for our review:

Assignment of Error No. 1: The trial court erred in holding that portions of Amended Senate Bill 342 ("Am.Sub.S.B. No. 342") impermissibly restrict municipal power and incorrectly analyzed whether the Bill is arbitrary, unreasonable, or rationally related to a legitimate purpose when the controlling test set forth in *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, does not call for such an inquiry.

Assignment of Error No. 2: The trial court erred in holding that portions of Am.Sub.S.B. No. 342 do not prescribe a rule of conduct on citizens generally and, thus, erred in finding those portions are not general laws as set forth in *Canton*.

Assignment of Error No. 3: The trial court erred in granting the City's summary judgment motion, because Am.Sub.S.B. No. 342 satisfies

all four parts of the general-law test set forth in [*Canton*], and is therefore constitutional in its entirety.

## II.  Standard of Review

{¶ 9} Appellate review of a summary judgment is de novo, *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), employing the same standard as trial courts.  *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989).  The motion may be granted only when it is demonstrated:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.  *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

## III.  Analysis

{¶ 10} In this appeal, the state claims that the trial court incorrectly concluded that S.B. 342 impermissibly restricts municipal power, and that it applied an incorrect standard in its analysis.  It challenges the trial court's determination that S.B. 342 does not prescribe a rule of conduct on citizens generally, and it insists that S.B. 342 passes all

7.

four prongs of the "general law" test that the court was required to apply in determining whether the legislation runs afoul of the city's home rule authority.

{¶ 11} Before we address the state's assignments of error, we begin by recognizing the "fundamental principle that a court must 'presume the constitutionality of lawfully enacted legislation.'" *Cleveland v. State,* 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370, ¶ 6, citing *Arnold v. Cleveland,* 67 Ohio St.3d 35, 38, 616 N.E.2d 163 (1993). Accordingly, the statutes at issue will not be invalidated unless the city establishes that they are unconstitutional beyond a reasonable doubt. *Id.* at ¶ 6.

{¶ 12} The home rule to the Ohio Constitution provides that "municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." In other words, a state law will take precedence over a municipal ordinance only where "(1) the ordinance is in conflict with the statute, (2) the ordinance is an exercise of the police power, rather than of local self-government, and (3) the statute is a general law." *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶ 17, quoting *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶ 9. As such, we utilize a three-part process when conducting a home-rule analysis. *Ohioans for Concealed Carry, Inc. v. Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, ¶ 24, citing *Am. Fin. Servs. Assn. v. Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 23-24.

8.

**{¶ 13}** In part one, we determine "whether the matter in question involves an exercise of local self-government or an exercise of local police power." (Citations omitted.) *Am. Fin. Servs. Assn.* at ¶ 23. "If an allegedly conflicting city ordinance relates solely to self-government, the analysis stops, because the Constitution authorizes a municipality to exercise all powers of local self-government within its jurisdiction." *Id.*

**{¶ 14}** If the ordinance pertains to concurrent police power rather than the right to self-government, we proceed to part two, which requires an examination of whether the state statute at issue is a "general law." If the state statute is not a general law, the ordinance will prevail over the state statute. *Mendenhall* at ¶ 18. If, however, the state statute does meet the definition of a general law, we turn to part three of our home rule analysis.

**{¶ 15}** In part three, we consider whether the state statute and the local ordinance are in conflict with one another. That is, we must ascertain "whether the ordinance permits or licenses that which the statute forbids * * *, and vice versa." *Struthers v. Sokol*, 108 Ohio St. 263, 140 N.E. 519 (1923), paragraph two of the syllabus.

**{¶ 16}** Here, the parties' debate centers primarily around whether S.B. 342 is a "general law." "General laws are those 'enact[ed] to safeguard the peace, health, morals, and safety, and to protect the property of the people of the state.'" *Dayton v. State*, 2015-Ohio-3160, 36 N.E.3d 235, ¶ 22 (2d Dist.), *appeal allowed*, 144 Ohio St.3d 1475, 2016-Ohio-467, 45 N.E.3d 243, quoting *Schneiderman v. Sesanstein*, 121 Ohio St. 80, 83, 167 N.E. 158 (1929). "Once a matter has become of such general interest that it is necessary

9.

to make it subject to statewide control as to require uniform statewide regulation, the municipality can no longer legislate in the field so as to conflict with the state." *Id.*, quoting *State ex rel. McElroy v. Akron*, 173 Ohio St. 189, 194, 181 N.E.2d 26 (1962).

{¶ 17} The Ohio Supreme Court in *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, devised a four-part test to determine whether a statute is a "general law":

> To constitute a general law for purposes of home-rule analysis, a statute must (1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally. *Id.* at syllabus.

{¶ 18} If a statute does not satisfy all four parts of the *Canton* analysis, it is not a general law, and it must yield to the municipal ordinance. *Id.* at ¶ 21.

{¶ 19} The trial court concluded that the provisions of S.B. 342 complained of by the city are not general laws because they impermissibly restrict the legislative powers of municipalities and because they do not prescribe a rule of conduct upon citizens generally. In challenging these conclusions, the state's first assignment of error focuses on the third prong of the *Canton* general law analysis and requires us to determine whether S.B. 342 sets forth police, sanitary, or similar regulations, or whether it purports

10.

only to grant or limit the city's legislative power to set forth its own police, sanitary, or similar regulations. Its second assignment of error focuses on the fourth prong of the analysis and requires us to determine whether S.B. 342 prescribes a rule of conduct on citizens generally. Its third assignment of error asserts that all four factors of the *Canton* general law analysis are satisfied.

### A. First Assignment of Error: Police, Sanitary, or Similar Regulation or Impermissible Limit of the City's Legislative Powers

{¶ 20} The trial court held that the previously-identified provisions of S.B. 342 failed to meet the third *Canton* element because they impermissibly limit the city's authority to (1) control the manner in which its internal decision-making process is conducted, (2) establish administrative proceedings, (3) establish and operate a police department, and (4) enter into contracts. It also concluded that the relevant provisions of S.B. 342 are unconstitutional because they are arbitrary and bear no relation to the goal of promoting the health, safety, morals, or general welfare of the public.

{¶ 21} The state contends that S.B. 342 serves the purposes of R.C. Chapter 4511 because it creates uniformity across the state for the use of photo-monitoring devices to enforce traffic laws. It points to the provisions of the legislation dealing with the options for paying or challenging a citation, hearing procedures, burden of proof, affidavit requirements, and maintenance records as examples of the uniformity accomplished by the statutes. The state also urges that the trial court erred in examining the

11.

constitutionality of S.B. 342 under a rational basis framework, which it argues is inapplicable in a home rule analysis.

{¶ 22} The city responds by asserting that the relevant provisions of S.B. 342 are unconstitutional because they "serve only to limit municipal legislative power." It describes S.B. 342 as a de facto ban on the use of cameras.

{¶ 23} In expounding on the third element of the "general law" analysis, the court in *Canton* explained that this "'principle of law is that a statute which prohibits the exercise by a municipality of its home rule powers without such statute serving an overriding statewide interest would directly contravene the constitutional grant of municipal power.'" *Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 32, quoting *Clermont Environmental Reclamation Co. v. Wiederhold*, 2 Ohio St.3d 44, 48, 442 N.E.2d 1278 (1982). In *Canton*, the court considered whether R.C. 3781.184(C)—forbidding political subdivisions from prohibiting or restricting the location of permanently sited manufactured homes in areas zoned for single-family residences—infringed on Canton's home-rule authority. *Id.* at ¶ 2. In doing so, the court observed that on its face, the statute at issue appeared to serve the overriding state interest in providing more affordable housing options across the state. *Id.* at ¶ 33. But a provision in the statute allowed private landowners to incorporate restrictive covenants which could exempt them from the prohibition contained in R.C. 3781.184(C), thus defeating the purpose of the legislation. *Id.* It, therefore, found that the statute did not set forth police, sanitary or similar regulations, but rather purported only to grant or limit the

12.

legislative power of a municipal corporation to set forth police, sanitary, or similar regulations. *Id.*

{¶ 24} The Ohio Supreme Court has held in no unclear terms that the city's home-rule authority permits it to use an automated traffic law enforcement system to impose civil liability. *Walker v. Toledo,* 143 Ohio St.3d 420, 201-Ohio-5461, 39 N.E.3d 474, ¶ 13. While the state now claims that its overriding state interest is to provide uniformity in the use of those automated enforcement systems, in its own words, the legislature's intent in enacting S.B. 342 was "*to establish conditions*" for the use of such devices. (Emphasis added.) Those conditions actually render it impractical and cost-prohibitive for most municipalities to use photo-monitoring devices as a tool for enforcement of local traffic laws. Instead of permitting municipalities to continue to enforce traffic laws in a manner that the Ohio Supreme Court has already deemed permissible, the conditions direct municipalities' conduct because they:

- *Force* an officer to be present at the place of the camera regardless of whether he or she observed the traffic offense. In doing so, the legislation effectively dictates police duties and directs the allocation of law enforcement resources.

- *Prohibit* the locale from issuing citations for infractions less than six miles per hour over the speed limit in school zones, and ten miles per hour elsewhere, thus preventing municipalities from enforcing traffic laws within their jurisdiction as they see fit.

13.

- *Obligate* municipalities to conduct three-year safety studies accounting for incidents that have occurred at the designated area, despite what they may already know from their experience and observation.

- *Mandate* that municipalities conduct a public information campaign and publish in the newspaper a notice of intent to use a traffic camera.

- *Impose* procedures for administrative hearings and *dictate* what defenses a hearing officer may consider.

- *Prevent* municipalities from issuing citations until the expiration of a 30-day public awareness period.

- *Specify* the content to be contained in citations.

- *Require* municipalities to erect signs informing inbound traffic that the locale uses traffic cameras and *particularize* the placement of signs at the location of the cameras.

{¶ 25} In effect, the conditions established by the legislature actually render illusory most municipalities' right to use photo-detection devices for enforcing traffic laws. To the extent that the relevant provisions of S.B. 342 operate primarily to limit the legislative power of municipal corporations to set forth their own police, sanitary, or similar regulations, they fail to satisfy the third requirement of the *Canton* general law analysis.

{¶ 26} The dissent reminds that the provisions of S.B. 342 must be read together with Chapter 4511 as a whole and not in isolation, and it characterizes our analysis of the

14.

statutes as "piecemeal." But the provisions of a multi-statute legislative act aimed primarily at limiting municipalities' power to legislate cannot be insulated simply by placing it into a larger statutory scheme. *See Dublin v. State*, 118 Ohio Misc. 2d 18, 2002-Ohio-2431, 769 N.E.2d 436, ¶ 326 (C.P.) ("[M]ere inclusion in a comprehensive legislative scheme is not determinative of whether a statute attempting to preempt municipal legislation on the subject matter of the statutory scheme is a 'general law.'").

{¶ 27} We, therefore, find the state's first assignment of error not well-taken.

### B. Second Assignment of Error: Prescribing a Rule of Conduct on Citizens Generally

{¶ 28} Under the fourth element of the *Canton* analysis, we consider whether S.B. 342 prescribes a rule of conduct upon citizens generally. The state points to R.C. 4511.098 (setting forth a person's options after he or she receives a ticket), and R.C. 4511.099 (establishing hearing procedures, a testimonial privilege, and a right to appeal), as evidence that the statutes prescribe a rule of conduct on citizens. The city counters that none of the identified statutes have any effect on citizens' conduct.

{¶ 29} In *Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 36, the court determined that the statute at issue failed this element because it applied "to municipal legislative bodies, not to citizens generally." We agree with the city that the same is true here. S.B. 342 is aimed not at setting forth rules to be followed by citizens— it is aimed at establishing conditions to be followed by the municipalities that wish to use photo-monitoring devices. In fact, the only provisions of the statutes pertaining to the

15.

conduct of citizens are those setting forth the citizen's options *after* he or she has been issued a citation.

{¶ 30} The state argues that "the fact that the isolated provisions of the Bill's larger statutory scheme are directed at municipalities does not mean that they do not prescribe a rule of conduct upon citizens generally." However, our review of the statutes reveals that the *opposite* is true: only isolated provisions of the bill are directed at citizens. As such, they fail the fourth factor of the *Canton* test.

{¶ 31} Accordingly, we find the state's second assignment of error not well-taken.

### C. Third Assignment of Error:
### Statewide and Comprehensive Legislative Enactment and
### Uniform Operation Throughout the State

{¶ 32} In light of our conclusions with respect to the state's first and second assignments of error, the relevant statutes are not "general laws," and they must yield to Toledo Municipal Code 313.12. Although we need not continue to the state's third assignment of error, we observe that the relevant statutes also fail the second prong of the *Canton* analysis because they do not operate uniformly throughout the state.

{¶ 33} In *Canton*, in examining the exception that allowed private landowners to incorporate restrictive covenants to avoid the requirements of R.C. 3781.184, the court predicted that "enterprising developers" in suburban portions of the state with newer housing developments would be able to opt out of the requirements of the statute. *Canton* at ¶ 28-29. It observed that the statute, therefore, would "effectively apply only in older areas of the state, i.e., cities where residential areas no longer have active

16.

homeowner associations." *Id.* at ¶ 30. As such, the court reasoned, the statute would not operate uniformly throughout the state. *Id.*

{¶ 34} Here, too, we find that various provisions of S.B. 342 do not operate uniformly. The evidence developed in the trial court indicates that the city currently has 44 cameras in place and only 19 officers assigned city-wide to patrol an 85 square-mile area over a 24-hour period. Even if all 19 officers could be diverted from their other duties to park their patrol cars next to the traffic cameras to satisfy R.C. 4511.093, the city would never have the financial resources to man every camera. In addition to this, the testimony at the hearing before the trial court established that in many instances, there is no feasible spot available for an officer to park at the camera location. This means that intersections and areas that the city knows to be dangerous or hot spots for traffic offenses simply cannot be monitored by an officer, thus preventing the use of the cameras as a deterrent to dangerous driving.

{¶ 35} The same is undoubtedly true for most of Ohio's major metropolitan areas. They simply do not have the resources available to place an officer at every camera. In smaller, less populated communities, however, where there may be a single stoplight and considerably less traffic, it may be feasible to dedicate an officer to the jurisdiction's only traffic light. In this way, the legislation does not operate uniformly, and, therefore, fails the second part of the *Canton* general law analysis.

{¶ 36} We, therefore, find the state's third assignment of error not well-taken.

17.

## D. Severability

{¶ 37} When a statute is found to be unconstitutional, it may be appropriate to sever the provision or provisions causing it to be unconstitutional. (Citations omitted.) *Cleveland*, 138 Ohio St.3d 232, 2014-Ohio-86, 5 N.E.3d 644, at ¶ 18. Three questions must be answered in determining whether severance is appropriate:

(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only*?* (Internal citations and quotations omitted.) *Id*. at ¶ 19.

{¶ 38} After considering these questions, we find that the following provisions identified by the trial court can be severed from S.B. 342: R.C. 4511.093(B)(1) and (3), 4511.095, 4511.096, 4511.097, 4511.098, 4511.099, 4511.0911(A) and (B), and 4511.0912.

## E. Conflict

{¶ 39} Article IV, Section 3(B)(4) of the Ohio Constitution states that "[w]henever the judges of a court of appeals find that a judgment upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other court of

18.

appeals of the state, the judges shall certify the record of the case to the supreme court for review and final determination."

{¶ 40} In order to qualify for certification to the Supreme Court of Ohio pursuant to Section 3(B)(4), Article IV of the Ohio Constitution, a case must meet the following three conditions:

> First, the certifying court must find that its judgment is in conflict with the judgment of a court of appeals of another district and the asserted conflict must be "upon the same question." Second, the alleged conflict must be on a rule of law-not facts. Third, the journal entry or opinion of the certifying court must clearly set forth the rule of law which the certifying court contends is in conflict with the judgment on the same question by other district courts of appeals. *Whitelock v. Gilbane Bldg. Co.*, 66 Ohio St.3d 594, 596, 613 N.E.2d 1032 (1993).

{¶ 41} We find that our holding today is in conflict with the Second District Court of Appeals' decisions in *Dayton v. State,* 2015-Ohio-3160, 36 N.E.3d 235 (2d Dist.), and *Springfield v. State*, 2016-Ohio-725, --N.E.3d--(2d Dist.). Accordingly we certify the record in this case for review and final determination to the Supreme Court of Ohio on the following issue:

{¶ 42} Whether Am.Sub.S.B. No. 342 is an unconstitutional infringement of municipalities' right to self-governance under Article XVIII, Section 3, of the Ohio Constitution.

19.

**{¶ 43}** The parties are directed to S.Ct.Prac.Rs. 5.03 and 8.01 for guidance.

## IV.  Conclusion

**{¶ 44}** We conclude that the provisions of S.B. 342 identified by the trial court fail to satisfy the second, third, and fourth prongs of the *Canton* "general law" analysis. Accordingly, we find the state's assignments of error not well-taken, and we affirm the April 27, 2015 judgment of the Lucas County Court of Common Pleas.  The costs of this appeal are assessed to the state under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

James D. Jensen, P.J.                     _____
                                                                        JUDGE


Arlene Singer, J.,                          _____
CONCURS AND WRITES                              JUDGE
SEPARATELY.


Stephen A. Yarbrough, J.,
DISSENTS AND WRITES
SEPARATELY.

**SINGER, J.**

{¶ 45} I write separately to affirm the decision of the trial court.

{¶ 46} I concur with Judge Jensen that S.B. 342 is not a general law and S.B. 342 fails to satisfy the fourth requirement of the *Canton* general law analysis in that it does not prescribe a rule of conduct upon citizens generally.

{¶ 47} In my opinion, all of the portions of S.B. 342 at issue, R.C. 4511.093(B)(1) and (3), 4511.095, 4511.096, 4511.097, 4511.098, 4511.099, 4511.0911(A) and (B) and 4511.0912 are directed at a municipality that utilizes traffic photo-enforcement devices, rather than toward citizens generally. Arguably the only portions that are directed toward citizens generally might be found in R.C. 4511.098 (options for paying or challenging the tickets) or R.C. 4511.099 (how administrative hearings are to be conducted, what types of evidence can be considered at those hearings, and applicable affirmative defenses). In my view, these portions, too, are directed at municipalities, to prescribe how they should provide a uniform system to process tickets and how they provide due process to citizens.

{¶ 48} I decline to engage in an analysis about whether the practical and financial effect on municipalities determine whether or not these statutes apply uniformly. I do not find it necessary, and therefore end my analysis and concurrence by finding that S.B. 342 fails the fourth factor in the *Canton* case, rendering S.B. 342 unconstitutional.

21.

**YARBROUGH, J.**

{¶ 49} Because I would reverse the judgment of the Lucas County Court of Common Pleas, denying appellants' motion for summary judgment and granting, in part, the city's motion for summary judgment, I respectfully dissent. Specifically, I would hold that S.B. 342 is constitutional in its entirety based upon my conclusion that it constitutes a comprehensive, uniform, statewide regulatory scheme that clearly prescribes a rule of conduct upon citizens generally.

{¶ 50} As noted in the majority's decision, a three-part process is utilized when conducting a home-rule analysis. *Ohioans for Concealed Carry, Inc. v. Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, ¶ 24, citing *Am. Fin. Servs. Assn. v. Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 23-24. In part one, we determine "whether the matter in question involves an exercise of local self-government or an exercise of local police power." *Twinsburg v. State Emp. Relations Bd.*, 39 Ohio St.3d 226, 228, 530 N.E.2d 26 (1988).

{¶ 51} If the ordinance pertains to concurrent police power rather than the right to self-government, we then proceed to part two, which requires an examination of whether the state statute at issue is a "general law" using the test enunciated in *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, syllabus. "If the state statute is not a general law, the ordinance will not be invalidated." *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶ 18. If, however, the state statute does meet the definition of a general law, we turn to part three of our home rule analysis.

22.

**{¶ 52}** In part three, we consider whether the state statute and the local ordinance are in conflict with one another. That is, we must ascertain "whether the ordinance permits or licenses that which the statute forbids * * *, and vice versa." *Struthers v. Sokol*, 108 Ohio St. 263, 140 N.E. 519 (1923), at paragraph two of the syllabus.

**{¶ 53}** Here, the parties acknowledge that Toledo Municipal Code 313.12 is an exercise of police power and is in conflict with the traffic law photo-monitoring provisions set forth in the Ohio Revised Code pursuant to S.B. 342. *See Marich v. Bob Bennett Constr. Co.*, 116 Ohio St.3d 553, 2008-Ohio-92, 880 N.E.2d 906, ¶ 14 ("the regulation of traffic is an exercise of police power that relates to public health and safety as well as the general welfare of the public"); *Springfield v. State*, --- N.E.3d ----, 2016-Ohio-725 (2d Dist.) (applying home rule analysis to a local traffic camera ordinance and concluding that the ordinance constituted the exercise of police power rather than local self-government). Therefore, the sole issue in this case is whether S.B. 342 is a "general law" under *Canton* and its progeny.

> To constitute a general law for purposes of home-rule analysis, a statute must (1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal

23.

corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally. *Canton, supra*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at syllabus.

### S.B. 342 is part of a comprehensive legislative enactment that operates uniformly throughout Ohio

{¶ 54} Under the first element of the *Canton* test, we must examine whether S.B. 342 is part of a statewide and comprehensive legislative enactment. Under the second element, we must determine whether S.B. 342 applies statewide and operates uniformly throughout the state.

{¶ 55} In *Canton*, the Supreme Court considered the constitutionality of R.C. 3781.184, which imposes construction standards for manufactured homes and prohibits local ordinances from enacting zoning restrictions on such homes. *Id.* at ¶ 23-24. In light of the absence of a statewide zoning scheme or a comprehensive plan for the licensing, regulation, or registration for manufactured homes, the court found that R.C. 3781.184 was not a general law. *Id.*

{¶ 56} Six years after *Canton* was decided, the Supreme Court issued its decision in *Marich*. There, the statute at issue was R.C. 5577.05, which sets maximum dimensions for vehicles traveling on public highways within Ohio. Because such size restrictions were abolished throughout the city of Norton by way of a local ordinance enacted by the city of Norton, the court was tasked with determining whether the state statute took precedence over the local ordinance. *Marich, supra*, at ¶ 1.

24.

**{¶ 57}** In determining whether R.C. 5577.05 was part of a comprehensive legislative enactment, the Supreme Court noted that R.C. Chapter 5577 "broadly regulates the dimensions of vehicles that may travel on public highways." *Id.* at ¶ 18. The court went on to indicate that R.C. Chapter 5577 imposes a variety of vehicle restrictions in addition to the width, height, and length restrictions imposed under R.C. 5577.05. Specifically, R.C. Chapter 5577 imposes restrictions on load weights, tire width, maximum axle loads, and wheel loads, among other things. *Id.* While acknowledging that R.C. 5577.05 contained exceptions to the size restrictions imposed therein for certain classes of vehicles (i.e. fire trucks, farm equipment, and utility trucks), the court stated that there are "no requirements that a statute must be devoid of exceptions to remain statewide and comprehensive in effect." *Id.* at ¶ 20. The court went on to conclude that such exceptions actually argued in favor of a finding that the statute was comprehensive insofar as it applied to all vehicles throughout the state except those expressly excepted. *Id.* Thus, the court determined that the first element of the *Canton* test had been met.

**{¶ 58}** Similarly, the court found that the first element was met in a subsequent case decided two weeks after *Marich*. In *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, the Supreme Court of Ohio held that Ohio's speed limit statute, R.C. 4511.21, is part of a statewide and comprehensive legislative enactment. *Id.* at ¶ 23. In so holding, the court noted that no part of Ohio is exempt from the statute's enforcement. The court also highlighted the fact that R.C. 4511.21 is part of R.C.

25.

Chapter 4511, "which as a whole regulates traffic laws and the operation of motor vehicles in the state of Ohio." *Id.*

{¶ 59} Likewise, the codified statutes at issue in this case are included in R.C. Chapter 4511. A glance at the topics covered in R.C. Chapter 4511 illustrates its comprehensive nature. For example, R.C. Chapter 4511 contains statutes governing traffic control devices and signage, traffic offenses, speed limits, operation of motor vehicles, bicycles, pedestrians, and parking. Given the breadth of topics addressed in these statutes concerning the regulation of traffic in Ohio, I find that S.B. 342 is part of a statewide and comprehensive legislative enactment. Accordingly, I would conclude that the first element of the *Canton* test is met in this case.

{¶ 60} Moreover, I find that S.B. 342 operates uniformly throughout the state. Indeed, no municipality is singled out for regulation in S.B. 342. Rather, all traffic law photo-monitoring programs throughout Ohio are subject to regulation. Further, S.B. 342 draws no distinction between municipalities based upon the number of traffic cameras in use with each municipality. In that regard, I disagree with the majority's premise that S.B. 342 does not operate uniformly throughout the state simply because it has an arguably greater impact on those municipalities with extensive traffic law photo-monitoring programs than it does on small municipalities with fewer traffic cameras. Although this may be true, the cost incurred for each camera would be consistent across municipalities since the same regulations apply statewide. Further, under S.B. 342, municipalities are free to determine the appropriate balance between the number of traffic

26.

cameras to utilize and the attendant costs of such cameras. The fact that Toledo's program may be more expensive than a suburban municipality's program is due to the fact that Toledo has decided to employ 44 cameras, not because S.B. 342 regulates Toledo's program differently than any other municipal traffic law photo-monitoring program. Thus, I find that S.B. 342 passes muster under the second element of the *Canton* test.

### S.B. 342 sets forth police, sanitary, or similar regulations, and prescribes a rule of conduct upon citizens generally

{¶ 61} Having found that S.B. 342 is part of a comprehensive legislative enactment that operates uniformly throughout Ohio, I now turn to the third and fourth elements of the *Canton* test. Under the third element, it must be determined whether S.B. 342 sets forth police, sanitary, or similar regulations, or merely purports to grant or limit a municipality's legislative power to set forth police, sanitary, or similar regulations. In expounding upon this element, the court in *Canton* stated that "'[t]he meaning of this syllabus principle of law is that a statute which prohibits the exercise by a municipality of its home rule powers without such statute serving an overriding statewide interest would directly contravene the constitutional grant of municipal power.'" *Canton,* 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 32, quoting *Clermont Environmental Reclamation Co. v. Wiederhold*, 2 Ohio St.3d 44, 48, 442 N.E.2d 1278 (1982). Under the fourth element, we consider whether S.B. 342 prescribes a rule of conduct upon citizens generally.

27.

**{¶ 62}** In examining S.B. 342, I am mindful of the following directive given by the Supreme Court of Ohio in *Mendenhall*:

> [S]ections within a chapter will not be considered in isolation when determining whether a general law exists. * * * All sections of a chapter must be read in pari materia to determine whether the statute in question is part of a statewide regulation and whether the chapter as a whole prescribes a rule of conduct upon citizens generally. *Mendenhall*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, at ¶ 27, citing *Canton* at ¶ 38.

**{¶ 63}** While very little in the way of argument is offered in the parties' briefs on the first two elements of the *Canton* test, the parties strongly disagree as to the trial court's findings under the third and fourth elements.[1] In its decision granting the city's motion for summary judgment, the trial court examined the relevant provisions of S.B. 342 in light of the third element and found that those provisions "are not general laws because they impermissibly restrict the legislative powers of municipalities." In the trial court's view, which the majority seems to embrace, S.B. 342 impermissibly limited the city's authority to (1) control the manner in which its internal decision-making process is conducted, (2) establish administrative proceedings, (3) establish and operate a police department, and (4) enter into contracts. Further, the court concluded that the relevant

---

[1] Notably, the trial court also refrained from addressing the first and second elements of the *Canton* test, opting instead to focus on the third and fourth elements because, in the court's estimation, resolution of those elements was dispositive of the case.

28.

provisions of S.B. 342 are unconstitutional because they are arbitrary and bear no relation to the goal of promoting the health, safety, morals, or general welfare of the public.

{¶ 64} On appeal, the state first challenges the trial court's finding that the relevant provisions within S.B. 342 are arbitrary. In that regard, the state contends that S.B. 342 serves the purposes of R.C. Chapter 4511 by creating uniformity across the state regarding the use of photo-monitoring devices to enforce traffic laws. Moreover, the state urges that the trial court erred in examining the constitutionality of S.B. 342 under a rational basis framework, which the state argues is inapplicable in a home rule analysis.

{¶ 65} The city responds by asserting that the relevant provisions of S.B. 342 are unconstitutional because they "serve only to limit municipal legislative power." Although the city concedes that R.C. Chapter 4511 is a comprehensive statewide motor vehicle code, it nonetheless argues that the mere placement of statutes within R.C. Chapter 4511 does not demand a finding that the statutes are general laws.

{¶ 66} Having considered the parties' arguments and the trial court's decision, I am persuaded that the relevant provisions in S.B. 342 set forth police, sanitary, or similar regulations, and do not merely grant or limit a municipality's legislative power to set such regulations. Further, I find that the relevant provisions prescribe a rule of conduct upon citizens generally. In reaching my conclusion, I am in agreement with the Second District's recent decision in *Dayton v. State*, 36 N.E.3d 235, 2015-Ohio-3160 (2d Dist.).

{¶ 67} In *Dayton*, the trial court granted a permanent injunction to the city of Dayton on its action challenging the constitutionality of S.B. 342 under the Home Rule

29.

Amendment. While the trial court found that S.B. 342 was not unconstitutional in its entirety, the court concluded that certain provisions within the statute ran afoul of the Home Rule Amendment. *Id.* at ¶ 5.

{¶ 68} On appeal, the Second District examined whether S.B. 342 was a general law under the third and fourth prong of the *Canton* test. *Id.* at ¶ 24-25. The court began its analysis by agreeing with the trial court's finding that certain Revised Code sections enacted pursuant to S.B. 342 regulate municipal authority. *Id.* at ¶ 28. However, the court determined that the trial court erred in considering certain provisions of S.B. 342 in isolation rather than considering S.B. 342 in pari materia, as required under the Supreme Court of Ohio's decision in *Mendenhall*. When considered as a whole, the court concluded that S.B. 342 "constitutes a comprehensive, uniform, statewide regulatory scheme which clearly prescribes a rule of conduct upon citizens generally." *Id.* at ¶ 38.

{¶ 69} In support of its conclusion, the court noted that S.B. 342 also regulates motorists (R.C. 4511.098-0910), manufacturers of traffic cameras (R.C. 4511.0911), and insurers (R.C. 3937.411). *Id.* As such, the court found that S.B. 342 "has 'extensive scope and does more than grant or limit state powers.'" *Id.*, quoting *Mendenhall*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, at ¶ 24.

{¶ 70} The Second District went on to compare the state's regulation of speed limits, which were found to be constitutional by the Supreme Court in *Mendenhall*, with the regulation of traffic law photo-monitoring devices in S.B. 342. Finding no material differences between the two areas of regulation in the home rule context, the court

30.

concluded that "if the State can constitutionally limit a municipality's ability to set its own speed limit in the interest of creating a comprehensive, statewide uniform statute regulating the speed of motor vehicles, it can also create a similar statewide uniform regulatory scheme governing traffic law photo-monitoring devices." *Id.* at ¶ 29.

{¶ 71} In light of its holding that S.B. 342 met the definition of a general law under *Canton* and its progeny, the Second District concluded that S.B. 342 is constitutional under the Home Rule Amendment, and vacated the trial court's permanent injunction. *Id.* at ¶ 39.

{¶ 72} Upon examination of the arguments advanced in this case, which are substantially the same as those offered in *Dayton*, I agree with our sister court's conclusion that S.B. 342 is a general law under *Canton*. I find that the trial court's contrary conclusion was guided by its piecemeal examination of certain provisions in S.B. 342. Such isolated examination is in violation of the Supreme Court's clear directive to consider legislation in pari materia when determining whether it constitutes a general law. *See Mendenhall*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, at ¶ 27, citing *Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 38 ("All sections of a chapter must be read in pari materia to determine whether the statute in question is part of a statewide regulation and whether the chapter as a whole prescribes a rule of conduct upon citizens generally."); *see also Cleveland v. State*, 128 Ohio St.3d 135, 2010-Ohio-6318, 942 N.E.2d 370 (reiterating that legislative schemes must be

31.

considered in pari materia under home rule analysis and concluding that appellate court erred in considering state firearm statute in isolation).

{¶ 73} Further, I am not persuaded by the city's argument that S.B. 342 should be found to be unconstitutional under the Supreme Court of Ohio's decision in *Linndale v. State*, 85 Ohio St.3d 52, 706 N.E.2d 1227 (1999). In *Linndale*, the Supreme Court addressed a state statute prohibiting local law enforcement officers from issuing speeding and vehicle weight citations when the municipality has less than 880 yards of the freeway within its jurisdiction. The court concluded that the state statute was not a general law in that it was "not a part of a system of uniform statewide regulation on the subject of traffic law enforcement." *Id.* at 55. Rather, the court found that the statute ran afoul of the Home Rule Amendment by prohibiting a handful of municipalities from utilizing local authorities to police freeways that traveled through the municipality. *Id.*

{¶ 74} Having considered *Linndale* and its application here, I find that it is inapposite. Unlike the statute in question in *Linndale*, S.B. No. 342 does not single out a small group of municipalities for regulation. Rather, S.B. 342 sets forth statewide procedures and regulations to be followed by *any* municipality wishing to implement the use of traffic cameras. Accordingly, *Linndale* is distinguishable from the case sub judice.

{¶ 75} Having determined that S.B. 342 is a general law under *Canton* and its progeny, it follows that S.B. 342 survives constitutional scrutiny under the Home Rule Amendment. Accordingly, I find the state's assignments of error well-taken. By

32.

extension, I conclude that the trial court erred in granting, in part, the city's motion for summary judgment. Accordingly, I would reverse and vacate the trial court's permanent injunction.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.