[Cite as *Toledo v. Ohio*, 2017-Ohio-215.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

City of Toledo

     Appellee

v.

State of Ohio, et al.

     Appellants

Court of Appeals No. L-15-1286

Trial Court No. CI0201501828

**<u>DECISION AND JUDGMENT</u>**

Decided: January 20, 2017

* * * * *

Adam Loukx, Law Director, and Jeffrey B. Charles, Chief
of Litigation, for appellee.

Mike DeWine, Ohio Attorney General, Nicole M. Koppitch,
Halli Brownfield Watson and Jordan Berman, Assistant Attorneys
General, for appellants.

* * * * *

**YARBROUGH, J.**

## I.  Introduction

{¶ 1} Appellants, the state of Ohio and Ohio Attorney General Mike DeWine (collectively referred to as "the state"), appeal the judgment of the Lucas County Court of Common Pleas granting appellee's, the city of Toledo, "Motion for Order to Enforce Permanent Injunction."  We affirm.

## A. Facts and Procedural Background

{¶ 2} On December 19, 2014, the General Assembly signed Am.Sub.S.B. No. 342 ("S.B. 342") into law. S.B. 342 regulates the use of traffic law photo-monitoring devices throughout the state. The city, which uses such devices to enforce red light and speeding laws, filed a complaint in the trial court on March 13, 2015, alleging that S.B. 342 was an unconstitutional infringement of its right to self-governance under Article XVIII, Section 3, of the Ohio Constitution (the "home rule provision"). The city requested injunctive relief and a stay of the enforcement of S.B. 342 until such time as the trial court could determine its constitutionality.

{¶ 3} On April 27, 2015, the trial court granted, in part, the city's motion for summary judgment upon a finding that a number of the statutory provisions enacted under S.B. 342 were unconstitutional under the home rule provision. Consequently, the trial court enjoined the enforcement of certain provisions of S.B. 342.[1] On May 7, 2015,

---

[1] In particular, the court enjoined the enforcement of the following provisions: (1) R.C. 4511.093(B)(1) and (3) (requiring police officer presence during the operation of photo-monitoring devices); (2) R.C. 4511.095 (mandating the completion of a safety study prior to implementation of photo-monitoring system); (3) R.C. 4511.096 (setting forth various law enforcement officer duties); (4) R.C. 4511.097 (specifying the requirements for tickets issued under an automated traffic control program); (5) R.C. 4511.098 (indicating the procedure that should be followed by one who receives a ticket alleging a violation of the traffic law under the automated traffic control program); (6) R.C. 4511.099 (providing for an administrative hearing for those wishing to appeal a citation under the automated traffic control program); (7) R.C. 4511.0911(A) and (B) (requiring manufacturers to provide maintenance records for photo-monitoring devices, along with a certificate of proper operation that attests to the accuracy of such devices); and (8) R.C. 4511.0912 (specifying that speed limit violations are only punishable if the speed exceeds the posted limit by at least 6 m.p.h. in a school zone and 10 m.p.h. elsewhere).

2.

the state appealed the trial court's decision to this court. We subsequently affirmed the trial court's decision in *Toledo v. Ohio*, 6th Dist. Lucas No. L-15-1121, 2016-Ohio-4906, 56 N.E.3d 997.[2]

{¶ 4} While the state's appeal was pending, the General Assembly passed Am.Sub.H.B. No. 64, the state's biennial budget bill ("H.B. 64"). H.B. 64 includes R.C. 4511.0915(A)-(C), 5747.50(C)(5), and 5747.502 (collectively referred to as the "budget bill provisions"), which condition a municipality's receipt of certain state funds on compliance with the traffic law photo-monitoring provisions in S.B. 342 that the trial court found to be unconstitutional. Under the budget bill provisions, the city is required to file a report with the Auditor of State indicating whether its program is "fully complying with R.C. Sec. 4511.092 to Sec. 4511.0914." If the city's program is not in compliance, it must inform the auditor of the amount equal to the "civil fines the local authority has billed to drivers." The Ohio Tax Commissioner is then required to reduce payments of local government funds to the city by the amount billed to drivers.

{¶ 5} In response to the General Assembly's passage of H.B. 64, the city, on July 8, 2015, filed a "Motion for Order to Enforce Permanent Injunction," in which it sought to permanently enjoin the enforcement of the budget bill provisions. In its motion, the city argued that the General Assembly's passage of these provisions was in

---

[2] Thereafter, the state appealed our decision to the Supreme Court of Ohio, which accepted the discretionary appeal. *Toledo v. Ohio*, 147 Ohio St.3d 1411, 2016-Ohio-7455, 62 N.E.3d 185. That appeal is currently pending before the Ohio Supreme Court, which heard oral arguments on the matter on January 10, 2017.

3.

"blatant disregard for the concept of separation of powers" and in retaliation against the city for successfully challenging the constitutionality of S.B. 342. The city went on to assert that the budget bill provisions were unconstitutional insofar as they interfered with the trial court's authority to enforce its own orders by forcing municipalities to comply with statutes the trial court had already found to be unconstitutional.

{¶ 6} Two weeks later, the state filed its memorandum in opposition to the city's motion, in which it argued that the court did not have jurisdiction in this case to strike down the budget bill provisions when the city's initial complaint only challenged the constitutionality of S.B. 342. In other words, the state contended that the city was required to file a new complaint challenging the constitutionality of the budget bill provisions if it wished to have such provisions enjoined by the trial court. Further, the state argued that the budget bill provisions did not violate the trial court's injunction regarding S.B. 342. In that regard, the state asserted that the trial court's finding that S.B. 342 was unconstitutional did not preclude it from "distributing its money in a manner that incentivizes particular conduct on the part of local entities." According to the state, the budget bill provisions do not compel municipalities to comply with S.B. 342. Rather, the state insisted that the provisions "merely establish a reporting system and financial incentives for cities to [comply with S.B. 342] through the manner in which the State distributes its money." The state went on to analogize its act of conditioning local government funds on compliance with S.B. 342 to the common practice of the federal government conditioning a grant of federal funds to the states based upon the states'

4.

compliance with federal directives in areas in which the federal government could not directly regulate under the United States Constitution.

{¶ 7} In its reply to the state's memorandum, the city dismissed the state's analogy of the present case to cases involving the federal government and the states. The city argued that none of the cases cited by the state in support of the analogy involved Congress requiring the states to comply with a statute that had been declared unconstitutional. Moreover, the city noted the absence of a home rule provision in the United States Constitution.

{¶ 8} Upon consideration of the foregoing arguments, the trial court released its decision on the city's motion on October 8, 2015. In its decision, the trial court found that the state's attempt to withhold funds from the city would constitute contempt of the court's prior permanent injunction insofar as it would force the city to comply with the provisions of S.B. 342 that it had already deemed unconstitutional. This, the court concluded, amounted to "economic dragooning." Thus, the court granted the city's motion, thereby enjoining the state "from taking any action that would result in a reduction of State funding to the City as a result of the City's noncompliance with the unconstitutional statutes." It is from this order that the state timely appealed.

5.

## B. Assignments of Error

**{¶ 9}** On appeal, the state assigns the following errors for our review:

Assignment of Error No. 1: The trial court acted without jurisdiction when it issued a post-judgment order enjoining laws not at issue in the complaint.

Assignment of Error No. 2: The trial court violated the separation of powers doctrine by using its prior injunction to encroach upon the General Assembly's role as arbiter of public policy.

Assignment of Error No. 3: Assuming *arguendo* that the trial court had jurisdiction, the trial court abused its discretion in holding that portions of Am.Sub.H.B. No. 64, the Budget Bill, violate its April 27, 2015 Order and that action to enforce those provisions establishes contempt of court.

Assignment of Error No. 4: Assuming *arguendo* [that] the trial court had jurisdiction, it abused its discretion by enjoining the Budget Bill provisions when the City failed to offer evidence demonstrating its entitlement to an injunction.

## II. Analysis

### A. Jurisdiction

**{¶ 10}** In its first assignment of error, the state argues that the trial court acted without jurisdiction when it issued its post-judgment injunction preventing the

enforcement of the budget bill provisions, which were not part of the underlying proceedings challenging the constitutionality of S.B. 342.

{¶ 11} "A question of jurisdiction is reviewed de novo, with no deference given to the trial court." *Sullivan v. Sullivan*, 6th Dist. Lucas No. L-09-1022, 2010-Ohio-3064, ¶ 14, citing *Swayne v. Newman*, 131 Ohio App.3d 793, 795, 723 N.E.2d 1117 (4th Dist.1998).

> When a permanent injunction has been issued by the trial court on the merits of a claim, the court has continuing jurisdiction to enforce the injunction. * * * A permanent injunction may be enforced as an act of the court and disobedience with the order may be punished as contempt. * * * The permanent injunction may be enforced by motion without the necessity of an independent action. (Citations omitted.) *Hosta v. Chrysler*, 172 Ohio App.3d 654, 2007-Ohio-4205, 876 N.E.2d 998, ¶ 32 (2d Dist.).

{¶ 12} In support of its argument that the city improperly challenged the constitutionality of the budget bill provisions without the filing of a new complaint, the state cites the Supreme Court of Ohio's decision in *Cicco v. Stockmaster*, 89 Ohio St.3d 95, 728 N.E.2d 1066 (2000). In that case, the court was tasked with interpreting the jurisdictional requirements of R.C. 2721.12, relating to actions seeking declaratory relief. Construing that statute, the court held that "a party who is challenging the constitutionality of a statute must assert the claim in the complaint (or other initial pleading) or an amendment thereto, and must serve the pleading upon the Attorney

7.

General in accordance with methods set forth in Civ.R. 4.1 in order to vest a trial court with jurisdiction under R.C. 2721.12." *Id.* at 97.

{¶ 13} Responding to the state's argument, the city challenges the state's characterization of the trial court's action, insisting that the trial court merely took appropriate steps to enforce its prior injunction by granting the city's motion. Contrary to the state's position, the city asserts that the trial court did not declare the budget bill provisions unconstitutional, nor did the city seek such relief. Rather, the trial court found that the enforcement of those provisions should be enjoined on the basis that it would violate the court's prior injunction concerning S.B. 342 by forcing municipalities to comply with the statutory provisions therein.

{¶ 14} Having reviewed the trial court's order, we agree with the city that the trial court did not determine the constitutionality of the budget bill provisions. Instead, the court examined the mandate of the budget bill provisions, namely the reduction of local government funds to municipalities such as the city that operated noncompliant automated traffic monitoring programs, and concluded that the mandate violated the court's prior injunction by penalizing the city for refusing to comply with statutes that the trial court had already deemed unconstitutional. As such, the trial court enjoined the state from "taking any action that would result in a reduction of State funding to the City of Toledo." As noted above, the trial court possessed continuing jurisdiction to enforce its permanent injunction. *Hosta, supra*, at ¶ 32; *American Motors Corp. v. Huffstutler*, 61 Ohio St.3d 343, 348, 575 N.E.2d 116 (1991) ("The Wood County Court of Common

8.

Pleas, having *in personam* continuing jurisdiction over Huffstutler, can continue to exercise supervisory authority over his compliance with the injunction."). Moreover, we find no merit to the state's argument that the trial court has no jurisdiction to issue a new injunction post-judgment where such relief is required in order to stop the state from acting in a manner inconsistent with the trial court prior injunction.

{¶ 15} Accordingly, the state's first assignment of error is not well-taken.

## B. Separation of Powers

{¶ 16} In the state's second assignment of error, it argues that the trial court's order improperly encroached upon the General Assembly's role as arbiter of public policy. Specifically, the state contends that the trial court "exceeded its constitutional authority by using its prior order to control the policy decisions of the General Assembly and striking down new and different legislation when it was without jurisdiction to evaluate its constitutionality." The state goes on to characterize the General Assembly's passage of the budget bill provisions as a "response to the few trial court determinations that portions of [S.B. 342] are unconstitutional in an effort to cure the constitutional deficiencies found by those courts. The Budget Bill provisions were not a mere re-enactment of previously stuck down legislation, but were substantially different provisions."

{¶ 17} Assuming, arguendo, that the state has accurately characterized the General Assembly's motives behind passage of the budget bill provisions, we nonetheless find that the trial court was within its constitutional authority when it enjoined the state from

9.

enforcing those provisions based upon a finding that enforcement of the provisions would result in a violation of the court's prior injunction. Although new legislation may be enacted to "cure the constitutional deficiencies" found by the trial court, such deficiencies are not cured where the new legislation merely compels a municipality to comply with the very statutes that were struck down. In such circumstances, a trial court does not implicate separation of powers issues by preventing the enforcement of the newly enacted provisions because the court is not acting as an arbiter of public policy, but is instead policing the parties' compliance with its prior court order. "The power of a court to enforce its own proper orders is fundamental and inherent, as well as constitutional; necessarily so, to give it standing and afford respect and obedience to its judgment. This is upon the broad ground of public policy, and without which power the judicial edifice would fall." *Wind v. State*, 102 Ohio St. 62, 64, 130 N.E. 35 (1921). Thus, we find no merit to the state's separation of powers argument.

{¶ 18} Accordingly, the state's second assignment of error is not well-taken.

### C. Contempt Finding and Grant of Injunction

{¶ 19} In its third assignment of error, the state argues that the trial court abused its discretion in holding that the budget bill provisions violate the court's April 27, 2015 order and that action to enforce those provisions constitutes contempt of court. Similarly, in its fourth assignment of error, the state argues that the trial court abused its discretion by enjoining the budget bill provisions because the city failed to offer evidence demonstrating its entitlement to an injunction.

10.

**{¶ 20}** A trial court has broad discretion in contempt proceedings. *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981). We review the trial court's finding of contempt for an abuse of its discretion. *Id.* Likewise, the standard of review for this court regarding the granting of an injunction by a trial court is whether the trial court abused its discretion. *Perkins v. Quaker City*, 165 Ohio St. 120, 125, 133 N.E.2d 595 (1956). In order to find an abuse of discretion, we must find that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 21}** In determining whether to grant injunctive relief, courts take into consideration the following four factors: (1) the likelihood or probability of a plaintiff's success on the merits; (2) whether the issuance of the injunction will prevent irreparable harm to the plaintiff; (3) what injury to others will be caused by the granting of the injunction; and (4) whether the public interest will be served by the granting of the injunction. *State ex rel. City of Cleveland v. Foxworth*, 8th Dist. Cuyahoga No. 101651, 2015-Ohio-1825, ¶ 25, citing *Corbett v. Ohio Bldg. Auth.*, 86 Ohio App.3d 44, 49, 619 N.E.2d 1145 (10th Dist.1993).

**{¶ 22}** Here, the state argues that the trial court abused its discretion in finding that the budget bill provisions compelled the city to comply with the provisions of S.B. 342 that the court had previously enjoined. The state urges that the budget bill provisions do not enforce or compel compliance with S.B. 342. Rather, the state asserts that the budget

11.

bill provisions merely set up financial incentives using discretionary state funds to encourage municipalities to comply with S.B. 342. The state insists that such a scheme is constitutionally permissible.

{¶ 23} In advancing its constitutional argument, the state relies on precedent established by the United States Supreme Court in *United States v. Sanchez*, 340 U.S. 42, 71 S.Ct. 108, 95 L.Ed. 47 (1950), *South Dakota v. Dole*, 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987), and *Natl. Fedn. of Indep. Bus. v. Sebelius*, 132 S.Ct. 2566, 183 L.Ed.2d 450 (2012). Generally speaking, these cases permit the federal government to regulate matters typically reserved for the states through the use of financial incentives to encourage the states to act or refrain from acting in a certain manner.

{¶ 24} Notably, these cases are silent on the issue of whether a state legislature may enact legislation that interferes with a municipality's home rule authority under the Ohio Constitution. Further, we need not consider the constitutional question of whether the General Assembly possesses the authority under the home rule provision of the Ohio Constitution to incentivize compliance with S.B. 342 because the pertinent issue here is a more basic one. The issue before us is whether the General Assembly, in enacting the budget bill provisions, has impermissibly interfered with the trial court's inherent power to enforce its injunction. In deciding this legal issue it is unnecessary to reach the question of the constitutionality of the budget bill provisions. *See State ex rel. DeBrosse v. Cool*, 87 Ohio St.3d 1, 7, 716 N.E.2d 1114 (1999), citing *State ex rel. BSW*

12.

*Development Group v. Dayton*, 83 Ohio St. 3d 338, 345, 699 N.E.2d 1271 (1998) ("Courts decide constitutional issues only when absolutely necessary.").

{¶ 25} Having examined the parties' arguments, we disagree with the state's contention that the budget bill provisions do not compel action in contravention of the trial court's injunction. The court's prior injunction forbade the state from enforcing S.B. 342. The budget bill seeks to resurrect the city's obligation to comply with S.B. 342, with no changes being made to the constitutionally defective provisions, through the use of financial coercion; that is, the city is required to choose between compliance with the unconstitutional statute or face a loss of state funding for its noncompliance. In other words, allowing the budget bill provisions to be enforced against the city would result in the city being penalized for its refusal to comply with the very statutes that the trial court already deemed unconstitutional. This act of the General Assembly essentially amounts to an end-run around the trial court's injunction in an effort to enforce S.B. 342, which, if permitted, would unconstitutionally deprive the court of its inherent power to enforce its injunction. *State ex rel. Johnston v. Taulbee*, 66 Ohio St.2d 417, 423 N.E.2d 80 (1981), paragraph one of the syllabus ("The administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers.").

{¶ 26} Under these facts, we find that the trial court did not abuse its discretion in finding that the budget bill provisions violated its April 27, 2015 order and that action to enforce those provisions constitutes contempt of court. Moreover, we find no merit to the

13.

state's argument that the city failed to offer evidence demonstrating its entitlement to an injunction, where the budget bill provisions speak for themselves and represent a clear violation of the trial court's injunction. Accordingly, the state's third and fourth assignments of error are not well-taken.

## {¶ 27} Conclusion

{¶ 28} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. The state is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

_____
JUDGE

Stephen A. Yarbrough, J.

_____

James D. Jensen, P.J.
CONCUR.

JUDGE

_____
JUDGE